ORIGINAL

JUDGE CROTTY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - X
                          :

UNITED STATES OF AMERICA      :     **SEALED**
                          :     **INDICTMENT**
    - v. -            :
                          :     19 Cr. ___ ()
SALVATORE TAGLIAFERRO     :
    a/k/a "Sal," and      :
JOHN DEFALCO,           :
    a/k/a "Cigars,"      :

          Defendants.    :
                          :
- - - - - - - - - - - - - - - - X

19 CRIM 472

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __JUN 2 5 2019__

## Background

### *Overview of the Scheme*

1.   As set forth below, between in or around 2017 and in or around June 2019, SALVATORE TAGLIAFERRO a/k/a "Sal," and JOHN DEFALCO a/k/a "Cigars," the defendants, both of whom were officers of local chapters of an international labor union, abused their positions of authority to solicit and accept cash bribes from prospective union members in exchange for securing the bribe payors' admission into the union.  In so doing, TAGLIAFERRO and DEFALCO defrauded the union of its right to their honest services, and unlawfully converted union property to their own use.

### *The Union and the Defendants*

2.   The United Brotherhood of Carpenters and Joiners of America (the "Union") is an international labor union subject to regulation under the Labor-Management

Reporting and Disclosure Act, and related laws.

3.    The New York City District Council of Carpenters and Joiners of America (the "District Council") is a representative body comprised of nine individual local chapters of the Union.

4.    One of these local chapters is the Local 926 chapter (the "Local 926"), which is located in Brooklyn, New York.  The Local 157 chapter (the "Local 157") is another local chapter located in Manhattan, New York.

5.    At all times relevant to this Indictment, SALVATORE TAGLIAFERRO, a/k/a "Sal," the defendant, was the President of the Local 926, a position he has held since at least in or about 2011.  At all relevant times, TAGLIAFERRO has also been an employee of the District Council, serving as a Council Representative since at least in or about 2017. TAGLIAFERRO receives compensation for each position.

6.    At all times relevant to this Indictment, JOHN DEFALCO, a/k/a "Cigars," the defendant, has been the Vice President of the Local 157, a position he has held since at least in or about 2017.  DEFALCO receives compensation for this position.

## Relevant Union Rules and Practices

7.    The Union has a constitution, which sets forth certain rules that apply to subordinate bodies under its jurisdiction, including Local 926 and Local 157.   The District Council has its own by-laws, which are intended to conform with the Union's constitution, as well as a consent decree previously entered in federal court.[1]   Local chapters, including the Local 926 and Local 157, typically have their own by-laws, which must also be consistent with the Union's constitution.

8.    Under all relevant Union rules and by-laws, including the Union constitution, SALVATORE TAGLIAFERRO a/k/a "Sal" and JOHN DEFALCO a/k/a "Cigars," the defendants, had a duty to provide their honest services to the Union and their respective local chapters.   In particular:

a.    Under the Union's constitution, the President of a local chapter has a duty to enforce the Union's constitution and laws, and the Vice President of a local

_____

[1] At all times relevant to this Indictment, the District Council has been subject to a consent decree in a matter brought under the civil remedies provisions of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, and captioned *United States v. United Brotherhood of Carpenters and Joiners of America, et al.*, Case No. 90 Civ. 5722 (VM).

3

chapter has a duty to assist the President in such duties.

b.    Under the District Council's code of ethics, every officer, employee and agent of the District Council and its local chapters (which include Local 926 and Local 157), have a fiduciary duty to exercise their authority and to conduct Union business solely on behalf of and for the benefit of the Union and its members.

9.    When an individual is admitted into the Local 926, he or she is given a membership card, colloquially referred to as a "book" or "union book," which is used to prove membership and is necessary to obtain employment with Union employers. These "books" are the property of the Union and the Local 926 and entitle holders to all the rights and privileges of members of the Union.

10.    The constitution and by-laws of the Union, District Council, and Local 926 also set forth rules regarding qualifications for membership in the Union.

a.    In particular, the Local 926's by-laws provide that any person of good moral character who is employed at a job over which the Local 926 has jurisdiction is eligible for membership. That is, a prospective Union member must have employment with a Union employer in order to gain admission.

4

b.    Different local chapters follow different procedures for confirming the eligibility of prospective Union members.  The Local 157 has a written policy requiring a letter from an employer representing that it has hired or intends to hire the prospective member for a particular project if admitted into the Union.  By contrast, at all times relevant herein, the Local 926 did not require such a letter.  Rather, the Local 926 purported to have employees confirm employment either by obtaining a pay stub from the prospective member or by contacting the prospective member's employer.  As described below, however this policy was not enforced with respect to those prospective members who had paid cash bribes to SALVATORE TAGLIAFERRO a/k/a "Sal" and JOHN DEFALCO a/k/a "Cigars," the defendants, as part of the scheme detailed herein.  In such cases, TAGLIAFERRO simply informed Local 926 employees, such as CC-2, that the prospective member should be admitted.

11.  Since on or about October 1, 2017, the Local 926 has experienced an unusually large increase in membership, with approximately 990 new members joining in that time period.  By way of comparison, the Local 45 chapter of the Union, which is located in Queens and is otherwise similarly situated to the Local 926, gained only approximately 200 new

members during the same time period.  Hundreds of the new

members admitted to the Local 926 during this period were

admitted as a result of the bribery scheme described below.

### The Conspiracy to Accept Bribes in Exchange for Union Membership

12.   From at least in or around 2017 up through and

including in or around June 2019, SALVATORE TAGLIAFERRO, a/k/a

"Sal," and JOHN DEFALCO, a/k/a "Cigars," the defendants, and

others known and unknown, conspired to sell admission into the

Local 926 in exchange for cash bribes.  In particular, DEFALCO

and other co-conspirators identified prospective Union members

and solicited cash payments from them, often in the amount of

$1,500.  Then, once prospective Union members made the

payments, DEFALCO sent those individuals' names to

TAGLIAFERRO, who would use his authority as President of Local

926 to ensure that they were accepted into the Local 926 and

received Union books.  DEFALCO and TAGLIAFERRO shared the

bribe payments.

13.   For example, in or about April 2018, DEFALCO

received a $1,500 cash bribe from a prospective Union member

("Individual-1"), and TAGLIAFERRO then used his authority to

ensure that Individual-1 was admitted into the Local 926, even

though Individual-1 did not have a job with a Union employer,

as required.   In particular:

  a.   In or about April 2018, Individual-1 was a member of another union (the "Sandhogs") for which job opportunities were increasingly limited, and therefore was seeking membership in the Union.

  b.   Individual-1 spoke to another Union member, a co-conspirator not named as a defendant herein ("CC-1"), who told Individual-1, in substance, that Individual-1 could secure Union membership by making a cash bribe payment. CC-1 then arranged, via text message, for Individual-1 to meet DEFALCO and pay him a cash bribe of $1,500 for admission to the Union.

  c.   On or about April 6, 2018, Individual-1 met with DEFALCO in Manhattan and gave him approximately $1,500 in cash in an envelope, as well as a piece of paper containing Individual-1's identifying information.   DEFALCO subsequently gave Individual-1's name to TAGLIAFERRO, along with the names of several other prospective Union members who had similarly paid cash bribes to gain admission into Local 926.

  d.   On or about April 8, 2018, CC-1 sent Individual-1 a text message, instructing him to call the Local 926 office and ask for a particular employee who handles the

membership applications of prospective members and is a co-conspirator not named as a defendant herein ("CC-2").  CC-1 told Individual-1 to tell CC-2 that "Sal [TAGLIAFERRO] is aware of everything."

   e. On or about April 9, 2018, TAGLIAFERRO sent a text message to CC-2, which contained a list of ten names, including the name of Individual-1, and added "All guys have jobs going with [employer]."  CC-2 took no steps to confirm Individual-1's employment, and indeed TAGLIAFERRO's message was false:  Individual-1 did not have a job with this employer, or with any eligible employer.

   f. On or about April 9, 2018, Individual-1 called the Local 926 offices to make an appointment to get his Union book, after which Individual-1 wrote to CC-1, in a text message: "[s]eems like they had my name already."  The next day, Individual-1 went the Local 926 offices, met with CC-2, and was admitted as a full journeyman carpenter, despite not having a Union job or providing any evidence of a Union job, rendering him ineligible for membership.

   g. Both while paying DEFALCO the bribe in Manhattan and while waiting to pick up his book at the Local 926 office, Individual-1 saw several other members of the Sandhogs, who appeared to be doing the same thing.

14.   The foregoing is one example of numerous bribes similarly solicited and accepted by SALVATORE TAGLIAFERRO a/k/a "Sal" and JOHN DEFALCO a/k/a "Cigars," the defendants, between in or around 2017 and in or around June 2019.   During that time period, DEFALCO regularly accepted cash bribes from prospective Union members and sent those names to TAGLIAFERRO and/or CC-2, and TAGLIAFERRO then ensured that these individuals were admitted to the Local 926.   Hundreds of new members were admitted to the Local 926 during this time period as a result of this scheme.

15.   SALVATORE TAGLIAFERRO a/k/a "Sal" and JOHN DEFALCO a/k/a "Cigars," the defendants, structured the scheme in this way because TAGLIAFERRO, as President of the Local 926, exercised control over who was admitted to that local chapter, and thus was able to secure admission for individuals who did not have eligible jobs.   By contrast, had these individuals been referred to the Local 157 (DEFALCO's local chapter), they would have had to provide a letter from a prospective employer, which many of them did not have.

16.   SALVATORE TAGLIAFERRO a/k/a "Sal" and JOHN DEFALCO a/k/a "Cigars," the defendants, made at least tens of thousands of dollars from the foregoing scheme, in violation of their duties to the Union, the District Council and their

local chapters.  Indeed, during the execution of a search warrant at DEFALCO's vacation home, law enforcement agents found approximately $150,000 in cash stored in Ziploc bags and concealed in the attic.

## The Defendants' Attempts to Conceal Their Criminal Conduct and Obstruct the Investigation

17.  Starting in or about at least March 2019, SALVATORE TAGLIAFERRO a/k/a "Sal" and JOHN DEFALCO a/k/a "Cigars," the defendants, became aware that an investigation into their conduct, which had been conducted by the Union's inspector general's office and a court-appointed monitor, had been referred to federal investigators.  For example, on or about March 26, 2019, DEFALCO said to CC-1 that TAGLIAFERRO was worried that the internal Union investigators were "going to the authorities," i.e., to federal law enforcement.

18.  As a result of their fear of investigation, SALVATORE TAGLIAFERRO a/k/a "Sal" and JOHN DEFALCO a/k/a "Cigars," the defendant, discussed curtailing their activities.  In particular:

a.  On or about March 25, 2019, TAGLIAFERRO sent DEFALCO a text message, initially telling him to "[s]top everything."  DEFALCO then explained, using what appears to be coded language, that it would look suspicious for them to

immediately stop the flow of new members into the Local 926,
saying: "If game goes to 0 . . . looks bad for box office can
we do 3-4 tickets a week I already got 3 ticket for film
festival." TAGLIAFERRO responded by saying "Yes." DEFALCO
replied, "OK u making me sick I'll keep ticket low I promise."

        b.   On or about March 26, 2019, in a recorded
conversation, DEFALCO told CC-1 in substance that TAGLIAFERRO
was hesitant to continue the scheme in light of law
enforcement scrutiny and referenced the fact that DEFALCO was
sharing the bribe proceeds with TAGLIAFERRO. CC-1 responded,
"[TAGLIAFERRO] might go a week or two and then realize his
pockets are getting thin." DEFALCO replied, "Yeah."

        c.   On or about May 17, 2019, DEFALCO sent a
text message to TAGLIAFERRO with a picture of a rat attached
to it, stating: "To [sic] many rats in this world."
TAGLIAFERRO responded, "Yes."

        19.   Moreover, and in an effort to conceal the
corrupt scheme, JOHN DEFALCO a/k/a "Cigars," the defendant,
took steps to conceal the illegal scheme described above and
to obstruct the investigation into his conduct, including but
not limited to the following:

        a.   On or about April 1, 2019, DEFALCO
pressured CC-1 to sign an affidavit falsely stating, in

substance, that DEFALCO had not accepted bribes in exchange for union membership. CC-1 ultimately refused to sign it.

   b. On or about April 17, 2019, DEFALCO pressured CC-1 to falsely exculpate DEFALCO, TAGLIAFERRO and CC-2 if questioned. Among other things, DEFALCO stated, in a recorded conversation, that CC-1 should say: "I would never give John's name out. I don't know Sal. I don't know [CC-2]."

   c. On or about May 23, 2018 DEFALCO was approached by federal law enforcement agents who seized his phone pursuant to a judicially authorized warrant. Several days later, on or about May 28, 2019, DEFALCO instructed a co-conspirator not named as a defendant herein ("CC-3"), who had received a federal grand jury subpoena on May 23, 2018 calling for both testimony and the production of documents, to delete certain text messages responsive to the subpoena.

   d. On or about May 28, 2019, DEFALCO and TAGLIAFERRO discussed how CC-3 should respond to law enforcement inquiries, agreeing that CC-3 should say, in substance, that CC-3 was only delivering Yankees tickets from DEFALCO to TAGLIAFERRO, when in fact CC-3 had been delivering cash bribe payments.

   e. Later that day, and consistent with the conversation described in sub-paragraph (d) above, DEFALCO

instructed CC-3 to testify falsely in the grand jury by repeating the story DEFALCO had discussed with TAGLIAFERRO regarding Yankees tickets.

       f.   On or about June 5, 2019, the day before CC-3 was scheduled to produce documents to the Government and testify in the grand jury, DEFALCO sent CC-3 a text message with a picture of several Yankees tickets for games that occurred in April and May 2019, writing: "Send these."

### Statutory Allegations

### COUNT ONE
### (Conspiracy)

The Grand Jury charges:

      20.   The allegations contained in paragraphs 1 through 19 of this Indictment are repeated and realleged as if fully set forth herein.

      21.   From at least in or around 2017, up through and including in or around June 2019, in the Southern District of New York and elsewhere, SALVATORE TAGLIAFERRO, a/k/a "Sal, and JOHN DEFALCO, a/k/a "Cigars," the defendants, and others known and unknown, willfully and knowingly did combine, conspire, confederate and agree together and with each other to commit offenses against the United States, to wit, (1) embezzlement of union assets, in violation of Title 21, United States Code,

Section 501(c), and (2) honest services wire fraud, in violation of Title 18, United States Code, Sections 1343 and 1346.

22.  It was a part and an object of the conspiracy that SALVATORE TAGLIAFERRO, a/k/a "Sal," and JOHN DEFALCO, a/k/a "Cigars," the defendants, unlawfully, willfully and knowingly would and did embezzle, steal, abstract and convert to their own use and the use of another, moneys, funds, securities, property, and other assets of labor organizations, of which each was an officer and by which each was employed, directly and indirectly, in violation of Title 29, United States Code, Section 501(c).

23.  It was further a part and object of the conspiracy that SALVATORE TAGLIAFERRO, a/k/a "Sal," and JOHN DEFALCO, a/k/a "Cigars," the defendants, willfully and knowingly, having devised and intended to devise a scheme and artifice to defraud, and to deprive their employers of their rights to their honest services, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, for the

purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Sections 1343 and 1346.

### Overt Acts

24.   In furtherance of said conspiracy and to effect the illegal objects thereof, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

a.   On or about April 6, 2018, JOHN DEFALCO, a/k/a "Cigars," the defendant, accepted approximately $1,500 in cash as a bribe from a prospective union member.

b.   On or about April 9, 2018, SALVATORE TAGLIAFERRO, a/k/a "Sal," the defendant, sent a text message to a union employee to ensure that the individual who paid DEFALCO on April 6, 2018 was admitted to the Union.

(Title 18, United States Code, Section 371.)

### COUNT TWO
### (Conversion of Union Assets)

The Grand Jury further charges:

25.   The allegations contained in paragraphs 1 through 19 of this Indictment are repeated and realleged as if fully set forth herein.

26.   From at least in or about 2017 up through and including in or about 2019, in the Southern District of New

York and elsewhere, SALVATORE TAGLIAFERRO, a/k/a "Sal" and

JOHN DEFALCO, a/k/a "Cigars," the defendants, unlawfully,

willfully and knowingly did embezzle, steal, abstract and

convert to their own use and the use of another, moneys,

funds, securities, property, and other assets of labor

organizations, of which each was an officer and by which each

was employed, directly and indirectly, to wit, TAGLIAFERRO and

DEFALCO caused Union membership books, which constitute

property of the Union, to be provided to prospective members

in exchange for cash bribes.

(Title 29, United States Code, Sections 501(c) and Title 18,
United States Code, Section 2.)

## COUNT THREE
### (Honest Services Wire Fraud)

The Grand Jury further charges:

27.   The allegations contained in paragraphs 1

through 19 of this Indictment are repeated and realleged as if

fully set forth herein.

28.   From at least in or about 2017, up through and

including in or about 2019, in the Southern District of New

York and elsewhere, SALVATORE TAGLIAFERRO a/k/a "Sal, and JOHN

DEFALCO a/k/a "Cigars," the defendants, willfully and

knowingly, having devised and intended to devise a scheme and

artifice to defraud, and to deprive their employers of their

16

rights to their honest services, and attempting to do so,
would and did transmit and cause to be transmitted by means of
wire, radio, and television communication in interstate and
foreign commerce, writings, signs, signals, pictures, and
sounds, for the purpose of executing such scheme and artifice,
to wit, TAGLIAFERRO and DEFALCO, through telephone
communications, among other means, agreed to and did deprive
their employers of their honest services, by soliciting and
accepting cash bribes in exchange for union membership books.

(Title 18, United States Code, Sections 1343, 1346 and 2.)

## COUNT FOUR
### (Witness Tampering)

The Grand Jury further charges:

29.    The allegations contained in paragraphs 1
through 19 of this Indictment are repeated and realleged as if
fully set forth herein.

30.    From at least in or about March 2019 up through
and including in or about June 2019, in the Southern District
of New York and elsewhere, JOHN DEFALCO a/k/a "Cigars," the
defendant, did knowingly intimidate, threaten, corruptly
persuade, and engage in misleading conduct toward another
person, and did attempt to do so, with the intent to
influence, delay, and prevent the testimony of a person in an

17

official proceeding, to wit, DEFALCO pressured CC-1 and CC-3 to make false statements to law enforcement officers and in testimony before a grand jury in connection with a federal grand jury investigation of DEFALCO and others.

(Title 18, United States Code, Sections 1512(b)(1) and 2.)

## COUNT FIVE
### (Obstruction of Justice)

The Grand Jury further charges:

31.    The allegations contained in paragraphs 1 through 19 of this Indictment are repeated and realleged as if fully set forth herein.

32.    On or about May 28, 2019, in the Southern District of New York and elsewhere, JOHN DEFALCO a/k/a "Cigars," the defendant, did knowingly intimidate, threaten, corruptly persuade, and engage in misleading conduct toward another person, and did attempt to do so, with intent to cause and induce a person to withhold testimony and withhold a record, document and other object from an official proceeding, to wit, DEFALCO instructed CC-3 to delete text messages between DEFALCO and CC-3 that were responsive to a grand jury subpoena served on CC-3 as part of a grand jury investigation of DEFALCO and others.

(Title 18, United States Code, Sections 1512(b)(2)(A) and 2.)

18

**FORFEITURE ALLEGATIONS: COUNTS ONE THROUGH THREE**

33.   As a result of committing the offenses alleged in Counts One through Three of this Indictment, SALVATORE TAGLIAFERRO a/k/a "Sal" and JOHN DEFALCO a/k/a "Cigars," the defendants, shall forfeit to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461, all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of such offense.

Substitute Asset Provision

34.   If any of the above described forfeitable property, as a result of any act or omission of the defendant:

a.   Cannot be located upon the exercise of due diligence;

b.   Has been transferred or sold to, or deposited with, a third person;

c.   Has been placed beyond the jurisdiction of the Court;

d.   Has been substantially diminished in value; or

e.   Has been commingled with other property which cannot be subdivided without difficult;

It is the intent of the United States, pursuant to 21 U.S.C. §

19

853(a) and (p), to seek forfeiture of any other property of

the defendants up to the value of the above forfeitable

property.

> (Title 18, United States Code, Section 981,
> Title 21, United States Code, Section 853, and
> Title 28, United States Code, Section 2461.)

_____
FOREPERSON

_____
GEOFFREY BERMAN
United States Attorney

20

Form No. USA-33s-274 (Ed. 9-25-58)

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

### UNITED STATES OF AMERICA

- v. -

### SALVATORE TAGLIAFERRO and
### JOHN DEFALCO,

Defendants.

### SEALED INDICTMENT

19 Cr. ___ ()

(18 U.S.C. §§ 371, 1343, 1346, 1512 and
2, 29 U.S.C § 501(c).)

Foreperson.                GEOFFREY BERMAN
                   United States Attorney.

A True Bill.

- TRUE BILL, SEALED INDICTMENT / ARREST WARRANTS (2)
- MAG. JUDGE ROBERT W. LEHRBURGER
                 6/25/19