# LAW OFFICES OF
# ROBERT G. STAHL, LLC

ROBERT G. STAHL♦
LAURA K. GASIOROWSKI•‡
ANDREW OLESNYCKY♦•

♦ CERTIFIED BY THE SUPREME COURT
OF N.J. AS A CRIMINAL TRIAL ATTORNEY

• Also Admitted in NY
‡ Also Admitted in LA

WRITER'S E-MAIL:
RSTAHL@STAHLESQ.COM

September 11, 2019

*Via ECF*
Hon. James L. Cott, U.S.M.J.
U.S. District Court, Southern District of New York
500 Pearl Street,
New York, New York 10007

    Re:    <u>*U.S. v. John DeFalco*, Case No. 19-cr-472</u>

Judge Cott:

    On September 9, we filed a motion seeking to modify Mr. DeFalco's conditions of release to remove him from home confinement and electronic monitoring. Also, on September 9, the government filed a motion to revoke Mr. DeFalco's bail and to detain him pending trial based upon alleged violations of the conditions of release. This letter-brief addresses the government's motion. We will not go into the alleged facts in detail in this submission, but rather discuss the alleged facts as applied to the relevant case law and how the alleged proffered evidence falls well short of clear and convincing evidence to prove a violation in the conditions of release. As such, no revocation is warranted. At the hearing scheduled for tomorrow, September 12 at 11 a.m., we will rebut the allegations in detail.

<u>Procedural History</u>

    On June 27, 2019, John DeFalco and Salvatore Tagliaferro were arrested on Indictment 19 Crim 472. The indictment alleges that Tagliaferro, as President of Local 926, and DeFalco as Vice President of Local 157, conspired with each other and others to accept cash bribes for admission into Local 926. They are charged with Conspiracy, Count One; Conversion of Union Assets, Count Two; and Honest Services Fraud, Count Three. DeFalco alone is charged with witness tampering in Count Four and obstruction of justice in Court Five. A detention hearing was held before Magistrate-Judge Lehrburger. The government sought detention based upon the alleged witness tampering and obstruction of justice.

After hearing argument from both sides on June 27, the Magistrate found that detention was not appropriate and set conditions of release as follows:

1. $500,000 unsecured bond;
2. Two financially responsible co-signors;
3. Home detention with location monitoring except for employment, religious services, attorney visits, court appearances, and other approved activities;
4. Travel restricted to SDNY, EDNY and New Jersey;
5. No communications with witnesses or victims except in the presence of counsel;
6. No employment with Local 157;
7. Seek and maintain full time stationary employment; and
8. May not maintain a cellphone except as directed by Pretrial Services.

Mr. DeFalco was released that day. On July 16, 2019, the parties agreed to a modification that permitted Mr. DeFalco to travel to New York to seek and secure employment at a non-Carpenter Union job site approved by Pretrial Services. (ECF Document 18). Despite the publicity attendant with the arrest, and several contacts with prospective employers by the DOL agent, Mr. DeFalco was able to secure full-time employment with Dolphin Construction Management LLC. After Mr. DeFalco secured full-time employment, Pretrial Services permitted him to have a cellphone so that they could reach him at any time during the day, and for DeFalco to use it for work and family.

Background

John DeFalco is 51 years old and was born and raised in New Jersey. He has been employed his entire adult life, and since 1986, with Carpenters' Union Local 157. He is a foreman/supervisor and Vice President of the Carpenters' Union. His mother and sister both live in New Jersey. He had one minor brush with the law 30 odd years ago for possession of steroids and received probation. John is married to Coleen and has two daughters. His eldest just started college at Sacred Heart University in Fairfield, Connecticut. His youngest daughter is in high school in New Jersey. John is a caring and supportive father and husband. He was married to Collen for 25 years. Although they divorced for a year, they have been back together for the past 3 years. John pays monthly child support, and is responsible for half of his daughter's college tuition and medical insurance.

Mr. DeFalco completely refutes the allegations against him. In order to put this in context, some background on the ongoing divisions and factions in the Carpenters' Union is necessary.

In November 2018, DeFalco and other union officials began working with a civil attorney to draft a suit against certain union officials improper and perhaps illegal activities with respect to, among other things, elections. The District Council had previously been found to have violated election rules, and prior presidents had been removed for corruption. The Court appointed Monitor for many years and knew of

DeFalco and Tagliaferro's dedication to the Union and that they were trying to clean house. It is well-known that there are many factions out to destroy DeFalco and Tagliaferro.

There are distinct and opposing factions within the Carpenters' Union and the District Council. Lines were drawn and enemies made that were out to take advantage of the situation and prevail in the internal fights. The Inspector General began investigating and eventually DOL agents stepped into the matter. The current charges – which we vehemently deny and will contest at trial – are the product of this internal war over the Union. The government's main cooperator CC-1, who is well-known by most of the members as cooperating[1], is a sandhog (workers who specialize in underground projects) who brought many of his fellow sandhogs into Local 926. CC-1 got caught shaking down his fellow sandhogs, charging them $1,500 for their Union cards. Once he was caught and agreed to cooperate, he claimed that he was doing so at the instructions of DeFalco and Tagliaferro. This is a complete fabrication.

DeFalco, and his co-defendant Tagliaferro, were bringing in new members to Local 926 because there is an election coming up. Unlike some other Locals, 926 does not require a prospective member to have an Intent to Hire Letter from a Union jobsite/employer. A prospective member only needs credentials, experience, an OSHA and scaffold card. The purpose of bringing in new members, in addition to the fact that jobs were available and needed filling due to the boom in building projects in the city, was to hopefully garner those new members' loyalty when it was time to vote. If DeFalco and Tagliaferro were trying to win over these new members' loyalties they would not demand bribes for entry into the Local. This was an opportunity that CC-1 saw and took full advantage of - shaking down his fellow sandhogs and blaming it on DeFalco and Tagliaferro.

Now that DeFalco has been charged, he is removed from his position as VP of Local 157, and prohibited from working on Union jobs by the terms of his release. Immediately after his release, John went about trying to find full-time employment to support his family, himself and pay legal fees. After losing out on several jobs, John finally landed a job with Dolphin Construction.

Not being satisfied with John being stripped of his VP position and being banned from union jobsites, the District Council has been sending trucks with signs, banners and workers to DeFalco's jobsite harassing the other workers and the managers by demonstrating and calling him a scab. The most recent time was just this past Monday. All this is a way to pressure Dolphin to fire DeFalco.

---

[1] The DOL and U.S. Attorney investigation was well-known for the months before charges were brought. Union meetings, flyers and leaked information about the grand jury investigation were all used to discredit the upcoming re-elections of DeFalco and Tagliaferro. Members knew who was being interviewed and even when certain individuals were being brought before the grand jury.

      In addition to requiring employment to meet his child support obligations, college tuition, expenses and legal fees, DeFalco also needs to maintain employment in order to continue his family's health coverage. More importantly, given the warring factions in the Union, if John does not work another 300 hours on Local 157 jobs, he will not only lose his health insurance, and he will not be able to run for election at the General Convention coming up in Las Vegas.

Argument

      On page 4 of its letter, the government alleges 3 instances that that they claim violate the conditions of release:

1. Days after DeFalco's arrest, Witness-1 received several phone calls from DeFalco, including from a cellphone where DeFalco allegedly told Witness-1 that CC-1 was cooperating against him and asked Witness-1 to give CC-3 his new cellphone number.

2. Witness-2, an unknown person claims that he heard from others that DeFalco has contacted numerous individuals that Witness-2 works with and DeFalco previously worked with – so presumably Local 157 members – and DeFalco allegedly stated his belief that Witness-2 was cooperating and made derogatory or intimidating statements about Witness-2.

3. Witness-3, a current Union official told the government that DeFalco contacted him and denied involvement in bribery scheme discussed his arrest and Indictment, and sought to explain facts.

      The threshold for detention is not easily satisfied. Pursuant to 18 USC Section 3148, "Sanctions for violation of release condition", the court has to find:

        (A) probable cause to believe that the person has committed a federal, state or local crime while on release **or**

        (B) clear and convincing evidence that the person has violated any other condition of release **AND**

        2)(A) based on factors in 3142(g), there is no condition or combination of conditions of release that will assure that the person won't flee or pose danger to safety of another person or community or 2(B); the person is unlikely to abide by any condition or combination of conditions of release

    The government cites to *LaFontaine* in support its use of proffered evidence and revocation. *LaFontaine*, however, is distinguishable in several material and critical respects:

1. Part of the critical evidence as to obstruction/witness tampering in *LaFontaine* was proven by a taped conversation that defendant had with a former employee of her medical clinic – on a taped line while LaFontaine was still in the MCC. This taped call provided powerful, corroborating evidence of LaFontaine's obstruction.

2. The government moved to revoke LaFontaine's bail on two grounds:

   a. Clear and convincing evidence that she violated conditions of release by contacting Reyes, Jr. (the call was to Reyes from MCC and Reyes was a specific class of individuals the Magistrate-Judge had imposed a no contact order for); and
   b. Probable cause to believe LaFontaine committed the crime of witness tampering by attempting to influence Reyes' testimony (again based on taped MCC call).

As opposed to the alleged proffered evidence here, in *LaFontaine*, the evidence of obstruction/tampering was substantial and corroborated in a number of key respects:

   1. After her release on bail, LaFontaine met with Reyes Jr. several times;
   2. LaFontaine treated Reyes Jr.'s children to gifts and meals, and had not done so in the past;
   3. LaFontaine invited Reyes Jr. to her house and played him a copy of the MCC tape and asked him to "remind" her mother that she had a hernia operation, even though that was false;
   4. At the time, LaFontaine knew Reyes was a likely government witness at trial;
   5. LaFontaine's husband sent Reyes Sr. a fraudulent set of medical records to support LaFontaine's statements to Reyes Jr.;
   6. LaFontaine also provided Reyes Jr. with the name and address of another employee that she wanted to contact, along with a transcript of the MCC tape and an affidavit of a government attorney;
   7. The government also proffered that LaFontaine had shredded documents, attempted to contact other witnesses and intimidated a doctor from the clinic;
   8. Once LaFontaine lied in court during the 3-day hearing about not having a copy of the MCC tape, the government substantiated its allegation that she had the tape;
   9. And finally, the government revealed in court that Reyes Jr. was the source of the proffer.

Previously, the Second Circuit in United States v. *Matir*, 782 F. 2d 1141 (2d Cir. 1986), had criticized the government where it proceeded strictly by way of proffer without any independent evidence - tapes, photos or documents – or any affidavits. The court in *LaFontaine* distinguished *Matir* because the government corroborated its proffer with the MCC tape.

The court also noted that witness tampering occurs when a person "knowingly…corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to (1) influence, delay or prevent the testimony of any person in an official proceeding, 1512(b).

Even with all the independent evidence provided by the government, Judge Mukasey was tempted to continue LaFontaine's release on house arrest with other conditions, but decided that her perjury during the hearing counseled in favor of detention. Both the District Court and Second Circuit found that it was a close call to revoke LaFontaine's bail and detain her. And, lastly, the Circuit noted that the trial was scheduled for less than 2 months away and that if there was a delay, the defendant could renew her motion without prejudice. Here, we have at least several more months of rolling discovery, motions and a trial most likely not until next Spring.

**We will address each of the 3 instances the government alleges in Court tomorrow at the hearing and demonstrate that they fail to meet the clear and convincing standard, and fail to show any knowing intent by John to tamper or obstruct with any alleged witness.**

Lastly, even if the Court finds that the government has met its burden, the inquiry does not end there. Rather, as required by the statute, the Court must find that based on the factors in 3142(g), there is no condition or combination of conditions of release that will assure that DeFalco will not pose danger to the safety of another person or community or that he is unlikely to abide by any condition or combination of conditions of release. As to this prong, we submit that there are certainly conditions of release that are sufficient under the facts and circumstances to warrant continuing bail.

Mr. DeFalco is well-aware of his responsibilities. He has been diligently working to support his family and to pay for legal fees. He is also diligently working with counsel defending this case. He has and will continue to abide by the conditions of release.

Respectfully submitted,

*/s Robert G. Stahl, Esq.*

Robert G. Stahl, Esq.

cc: AUSA Jarrod Schaeffer (via ECF)
      AUSA Thomas McKay (via ECF)
      PTS Officer John Moscato (via ECF)
      PTS Officer Nicholas Zotti (via email)