UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

United States of America,

v.                                                    19 Cr. 472 (PAC)

Salvatore Tagliaferro,

*Defendant.*

## MEMORANDUM OF LAW OF THE UNITED STATES OF AMERICA IN OPPOSITION TO DEFENDANT SALVATORE TAGLIAFERRO'S PRETRIAL MOTIONS

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York

Thomas A. McKay
Jarrod L. Schaeffer
Assistant United States Attorneys
    *Of Counsel*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT ............................................................................................................................2

    I. The Defendant's Motion to Sever is Both Meritless and Premature ..................................2

    II. The Defendant's Request for An "Offer of Proof or Informative Outline" Is Meritless ......4

    III. The Defendant's Requests for Immediate Disclosures of Rule 806 and Rule 807 Material
        Are Meritless ...........................................................................................................7

    IV. The Defendant's Request for Immediate Disclosure of Rule 608 and Rule 609 Material is
        Contrary to Law .......................................................................................................8

    V. The Defendant's Request for Early Disclosure of Charts, Graphs, Diagrams, and Summaries
       is Premature and Unnecessary ...................................................................................9

    VI. The Defendant's Request for Immediate Disclosure of *Brady* Material is Unnecessary....9

    CONCLUSION.......................................................................................................................12

## PRELIMINARY STATEMENT

The Government respectfully submits this memorandum of law in opposition to the pretrial motions filed by Salvatore Tagliaferro (hereinafter, the "Tagliaferro" or the "defendant").

The defendant is charged with one count of conspiracy to convert property of a labor union and commit honest services wire fraud, in violation of 18 U.S.C. § 371 ("Count One); one count of converting union assets, in violation of 29 U.S.C. § 501(c) and 18 U.S.C. § 2 ("Count Two); and one count of honest services wire fraud, in violation of 18 U.S.C. §§ 1343, 1346, and 2 ("Count Three). In brief, between in or around 2017 and in or around June 2019, the defendant and his co-defendant, John DeFalco (collectively, "the defendants"), both of whom were officers of local chapters of the United Brotherhood of Carpenters and Joiners of America (the "Union"), abused their positions of authority to solicit and accept cash bribes from prospective union members in exchange for securing the bribe payors' admission into the Union.

At all times relevant to this case, the defendant was the President of the Local 926, a position he held since at least in or about 2011. The defendant also was a Council Representative and employee of the New York City District Council of Carpenters and Joiners of America (the "District Council"), a representative body comprised of nine individual local chapters of the Union, since at least in or about 2017.

Under all relevant Union rules and by-laws, the defendants had a duty to provide their honest services to the Union and their respective local chapters. Instead, they defrauded the Union of its right to their honest services, and unlawfully converted Union property to their own use by conspiring to sell admission into the Local 926 – the local chapter headed by the defendant – in exchange for cash bribes. As President of the Local 926, the defendant exercised control over who was admitted to that local chapter, and thus was able to secure admission for individuals who did

not have eligible jobs.  Defendants Tagliaferro and DeFalco made at least tens of thousands of dollars from this scheme, in violation of their duties to the Union, the District Council, and their local chapters.

In his omnibus motion, the defendant now moves (*i*) to sever his trial from that of his co-defendant; (*ii*) for an offer of proof or informative outline explaining how the Government intends to admit co-conspirator statements at trial; (*iii*) for the disclosure of material pursuant to Federal Rules of Evidence 806 and 807; (*iv*) for the disclosure of material pursuant to Federal Rules of Evidence 608 and 609; (*v*) for the disclosure of any charts, graphs, diagrams, and summaries; (*vi*) for an order directing the Government to retain notes and writings; (*vii*) for the immediate disclosure of material pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963); (*viii*) for permission to join in any relevant motions filed by his co-defendant; and (*ix*) for leave to file further, unspecified motions.  The defendant's requests, most of which are devoid of any citation to relevant authority, should be rejected.  Regardless, as explained below, the Government already intends to provide early pretrial disclosures consistent with well-established practices in this District.

## ARGUMENT

### I.  The Defendant's Motion to Sever is Both Meritless and Premature

Tagliaferro's request to sever his trial from that of his co-conspirator, DeFalco, is both meritless and premature.  Trial in this case is currently scheduled to begin on May 4, 2020 – more than two months from now.  During that period, the Government expects to continue discussions concerning potential pretrial resolutions that it has initiated with both defendants.  At present, the Government expects that at least one defendant will plead guilty, which would moot this motion.  Thus, there is no need for the Court to rule on severance at this juncture; there is ample time before trial, and there will be no prejudice to the defendant from deferring a ruling on a potentially moot issue until closer to trial.

Even if the Court were to consider the defendant's severance argument at this stage, however, there is no basis to sever Tagliaferro's trial from that of his co-conspirator. "For reasons of economy, convenience and avoidance of delay, there is a preference in the federal system for providing defendants who are indicted together with joint trials." *United States v. Feyrer*, 333 F.3d 110, 114 (2d Cir. 2003) (citations omitted). "This preference is particularly strong where, as here, the defendants are alleged to have participated in a common plan or scheme." *United States v. Salameh*, 152 F.3d 88, 115 (2d Cir. 1998). None of the arguments advanced by the defendant overcome that presumption here.

The sole contention the defendant raises in favor of severance is that DeFalco is charged with two additional counts of witness tampering and obstruction of justice, and Tagliaferro "may be tarred by De[F]alco's conduct" if they are tried together. (ECF No. 57 at 8.) That argument is unavailing. All of DeFalco's actions were efforts to conceal the co-defendants' joint union bribery scheme – *i.e.* the same scheme in which both of the defendants are charged in Count One. Since Tagliaferro is a "fully implicated conspirator, . . . most of the evidence of which he complains" would be "admissible against him in a separate trial as acts of co-conspirators in the furtherance of a conspiracy." *United States v. Friedman*, 854 F.2d 535, 563 (2d Cir. 1988) (quoting *United States v. Bari*, 750 F.2d 1169, 1178 (2d Cir. 1984)).

Nor is it true, as Tagliaferro asserts, that "[t]here is no allegation that [he] engaged in any attempt to tamper or interfere with the Government's investigation of this case . . . ." (ECF No. 57 at 9.) In fact, although this defendant is not separately charged with witness tampering and obstruction of justice, the Indictment specifically alleges that "in or about at least March 2019, . . . the defendants . . . became aware that an investigation into their conduct, which had been conducted by the Union's inspector general's office and a court-appointed monitor, had been

referred to federal investigators," and that "[a]s a result of their fear of investigation . . . *the defendants* . . . discussed curtailing their activities." (ECF No. 2 ¶¶ 17–18 (emphasis added).) Moreover, the Government expects that evidence at trial would show, among other things, that Tagliaferro tried to deceive the Union's court-appointed monitor regarding his role in the scheme, and attempted to orchestrate a sham investigation designed to identify and intimidate witnesses within the Union. As such, there is no risk that actions by DeFalco would unfairly color the jury's view of Tagliaferro. In any event, as the Supreme Court has noted, to the extent any concerns about prejudice to the defendant remain, "less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice." *Zafiro v. United States*, 506 U.S. 534, 539 (1993) (citing *Richardson v. Marsh*, 481 U.S. 200, 210 (1987)).

Accordingly, the Court need not rule, at this stage, on the defendant's severance request. Should the Court determine to consider that request, however, it should be denied.

## II.  The Defendant's Request for An "Offer of Proof or Informative Outline" Is Meritless

The defendant seeks an order compelling the Government to provide "a pretrial offer of proof or informative outline" detailing bases for admission into evidence of any co-conspirator statements that may be offered at trial, and that the Government be required "to proffer *now* as to how it will independently establish [defendant] Tagliaferro's participation in the conspiracy is appropriate in order to confirm whether the Government is able to meet its evidentiary burdens with respect to these statements . . . ." (ECF No. 57 at 11 (emphasis in original.) That request is meritless.

The defendant cites no authority requiring the Government to prepare and disclose an "informative outline" of its trial strategy for defense counsel months before trial. To the contrary, Rule 16 does not require the production of co-conspirators' statements, let alone an "informative outline" setting forth the evidentiary bases on which the Government may seek to admit them.

4

*See, e.g.*, *United States v. Percevault*, 490 F.2d 126, 131 (2d Cir. 1974) ("Although his notions of fairness may lead a district judge to encourage disclosure of statements made by co-conspirators who are potential government witnesses, Rule 16(a) simply does not encompass these statements, nor does the Jencks Act permit their disclosure over the objection of the [G]overnment."); *United States v. Lopez*, No. 18-CR-736 (NSR), 2019 WL 4733603, at *11 (S.D.N.Y. Sept. 27, 2019) (quoting *Percevault*, 490 F.2d at 131) ("The Second Circuit has made it clear that "Rule 16(a) simply does not encompass co-conspirator statements.") (internal alteration omitted); *United States v. Jiminez*, No. 13-CR-847 (KBF), 2015 WL 2236184, at *3 (S.D.N.Y. May 13, 2015) (holding a "defendant's demand for co-defendant statements [wa]s inappropriate—at least at this pre-trial juncture," because "[t]he law is clear that such statements are not discoverable under Rule 16"); *United States v. Polanco*, No. 97-CR-106 (DC), 1997 WL 452389, at *3 (S.D.N.Y. Aug. 8, 1997) ("[T]he Government is under no obligation to produce statements of a witness until after that witness testifies on direct examination."). Indeed, Rule 16 expressly exempts from discovery "statements made by prospective government witnesses except as provided in 18 U.S.C. § 3500." Fed. R. Crim. P. 16(a)(2).

Lacking authority for his request, Tagliaferro attempts to invoke the requirement that the Government make a threshold showing in order to admit co-conspirators' statements at trial. But the defendant's assertion that "there does not appear to be any independent corroborating evidence that connects [the defendant] to the conspiracy" (ECF No. 57 at 11) is simply incorrect, as the defendant well knows from reviewing the discovery. The Government has already produced ample evidence corroborating the defendant's involvement in the charged scheme, including text messages sent by the defendant concerning the scheme, images recovered from the defendant's

cellphone, and evidence concerning meetings between the Tagliaferro and DeFalco in furtherance of their scheme.

Of course, to the extent any co-conspirators' statements are documented in material to be produced pursuant to the Jencks Act ("3500 material"), the Government is aware of its obligations with respect to 3500 material and will disclose any such material sufficiently in advance of trial to permit its effective use by the defense. Indeed, the Government already intends to produce any 3500 material at least two weeks prior to trial in order to provide the defense sufficient time to make use of such material. The Government expects that 3500 material will confirm the identity of certain Government witnesses, and document certain co-conspirators' statements that the Government intends to introduce at trial. The defendant retains the ability to challenge the admissibility of any such statements *in limine*, or to object to their admission during trial, as is the "normal process" in this District. *United States v. Russo*, 483 F. Supp. 2d 301, 310 (S.D.N.Y. 2007). Indeed, when appropriate, the Government is likely to move *in limine* to confirm that certain categories of co-conspirators' statements will be conditionally admitted at trial, as is also common practice in this District. *See, e.g.*, *United States v. Tracy*, 12 F.3d 1186, 1199 (2d Cir. 1993).

In sum, the defendant's request for an order compelling the Government to provide "a pretrial offer of proof or informative outline" (ECF No. 57 at 11) is simply an attempted end-run of the normal disclosure process, and an effort to obtain early disclosure of the Government's witness list and 3500 material. It should be denied.[1]

---

[1] As the Government intends to comply fully with its obligations under the Jencks Act, and has no intent to destroy potential 3500 material, an order directing the Government to preserve "rough notes taken at any time as part of the[] investigation" is unnecessary. (ECF No. 57 at 15.) And to the extent the defendant purports to seek the preservation of notes or other writings by persons

Case 1:19-cr-00472-PAC   Document 58   Filed 02/21/20   Page 9 of 14

**III.   The Defendant's Requests for Immediate Disclosures of Rule 806 and Rule 807 Material Are Meritless**

The defendant next seeks orders compelling the Government to "give immediate notice to the defense of any evidence or statements . . . that might be admissible pursuant to Rule 806 of the Federal Rules of Evidence," and to "give immediate notice to the defense with respect to any hearsay evidence the Government intends to offer" pursuant to Rule 807 of the Federal Rules of Evidence.  (ECF No. 57 at 12–14.)  Those requests, which are not supported by any citation to relevant authority, are meritless.

With respect to Rule 806 material, the defendant seeks immediate disclosure of any evidence admissible to attack the credibility of a declarant whose statement may be admitted pursuant to Rule 801(d)(2)(E).  (*See* ECF No. 57 at 12.)  However, "the prosecution [is] under no obligation to give [a defendant] advance warning of the witnesses who [will] testify against him." *United States v. Alessi*, 638 F.2d 466, 481 (2d Cir. 1980).  Nevertheless, as noted above, the Government intends to make early disclosures of 3500 material regarding witnesses expected to testify at trial.  The Government will also provide discoverable impeachment material at that time.

As to Rule 807, the rule provides merely that "notice must be provided in writing *before the trial* . . . or in any form *during the trial* . . . if the [C]ourt, for good cause, excuses a lack of earlier notice."  Fed. R. Evid. 807(b) (emphasis added).  At this early stage, the Government has not yet identified any material it intends to introduce under Rule 807.  If it does so in the course of its preparations for trial, the Government will provide notice to the defendant sufficiently in advance of trial to permit the defendant a fair opportunity to respond.

---

other than members of the prosecution team, the Government is under no obligation to search for, obtain, or preserve documents outside its possession, custody, and control.

7

Accordingly, the defendant's requests for orders compelling the Government to give immediate notice of any evidence that may be admissible pursuant to Rule 806 or Rule 807 should be denied.

## IV. The Defendant's Request for Immediate Disclosure of Rule 608 and Rule 609 Material is Contrary to Law

The defendant also seeks an order compelling the Government "immediately to disclose any and all materials . . . which the Government intends to use at trial for purposes of impeachment pursuant to Federal Rules of Evidence 608 and 609." (ECF No. 57 at 14.) This request purportedly applies both to Tagliaferro himself, and to "any other witness" that the defense may call. (*Id.*). Again, the defendant cites no authority in support of his request.

"The only notice requirement imposed by either Rule 608 or Rule 609 applies where a party intends to introduce evidence of a conviction that is more than ten years old." *United States v. Livoti*, 8 F. Supp. 2d 246, 250 (S.D.N.Y. 1998). Because "[t]he Government has no obligation to provide [the defendant] with notice of any material that will be used to impeach him pursuant to Rule 608 should he elect to testify," *id.*, there is no basis on which to grant the defendant's demand for notice under Rule 608. *See United States* v. *Song*, No. 95-CR-129 (KMW), 1995 WL 736872, at *7 (S.D.N.Y. Dec. 13, 1995) ("Rules 608 and 609 do not require the government to provide notice of impeachment evidence."). That is especially true with respect to "any other witness" that the defense may call, as the Government has not even been informed of the identity of any such witnesses. And as to Rule 609 disclosures, the Government has already provided the defendant with a copy of his criminal history record, as well as certain information about his prior federal conviction. Those disclosures are more than sufficient to satisfy the notice requirements set forth in Rule 609. To the extent the Government learns of any additional criminal history, it will promptly provide the defendant with that information.

8

Accordingly, the defendant's request for an order compelling the Government to disclose any material it intends to use at trial pursuant to Rules 608 and 609 is meritless and should be denied.

## V.   The Defendant's Request for Early Disclosure of Charts, Graphs, Diagrams, and Summaries is Premature and Unnecessary

The defendant further seeks an order compelling the Government to disclose to the defendant "well in advance of trial" any charts, graphs, diagrams, and summaries "that the Government may seek to offer at trial . . . to collect, demonstrate[,] or summarize the Government's allegations or alleged evidence." (ECF NO. 57 at 15.)  To the extent that the Government prepares such charts, graphs, diagrams, or summaries, they would reflect the Government's trial preparations and strategy and, as such, remain privileged work product until the Government determines to use them as demonstratives or exhibits.  Should the Government chose to utilize any such items as demonstratives or exhibits, the Government will disclose them at a reasonable time prior to trial consistent with established practice in this District.  As such, the defendant's request should be denied.

## VI.   The Defendant's Request for Immediate Disclosure of *Brady* Material is Unnecessary

Finally, the defendant requests an order directing the immediate disclosure by the Government, pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), and subsequent cases, of "any and all information in its possession custody or control referring to or reflecting the charges" in Counts One through Three of the Indictment.  (ECF No. 57 at 17.)

As an initial matter, the defendant appears to utilize a substantially overbroad definition of what constitutes *Brady* material under governing law.  It simply is not the case that "any and all information . . . referring to or reflecting the charges" (ECF No. 57 at 17) in a criminal case amounts to material, exculpatory information that the Government is required to disclose.  The

Second Circuit has explained "[t]he basic rule of *Brady*" and its progeny imposes on the Government "a constitutional duty to disclose favorable evidence to the accused where such evidence is material either to guilt or to punishment." *United States v. Coppa*, 267 F. 3d 132, 139 (2d Cir. 2001) (alterations, citations, and internal quotation marks omitted) (citing, *inter alia*, *Brady*, 373 U.S. at 87). And it similarly is not the case that "information from any witness that has stated that they did not see or observe Tagliaferro take any money," or any statements from any witness "that spoke favorably about Tagliaferro in relation to the allegations of the case," constitute *Brady* material. The failure to observe a crime by an individual not alleged to have been in a position to do so is neither material nor favorable to the defense. *See, e.g.*, *Coppa*, 267 F.3d at 146 (reversing order requiring disclosure of "witness statements that, although they might indeed contain impeachment evidence, do not rise to the level of materiality" described in cases interpreting *Brady*); *United States v. Payne*, 63 F.3d 1200, 1210 (2d Cir. 1995) ("In general, impeachment evidence has been found to be material where the witness at issue supplied the only evidence linking the defendant(s) to the crime, or where the likely impact on the witness's credibility would have undermined a critical element of the prosecution's case.") (collecting cases) (internal quotations and citations omitted); *cf. Moore v. Illinois*, 408 U.S. 786, 797 (1972) ("We know of no constitutional requirement that the prosecution make a complete and detailed accounting to the defense of all police investigatory work on a case.").

At most, such information may constitute impeachment material for a witness that testifies to the contrary. *See United States v. Nogbou*, No. 07-CR-814 (JFK), 2007 WL 4165683, at *2 (S.D.N.Y. Nov. 19, 2007) (quoting *United States v. Bagley*, 473 U.S. 667, 675 (1985)) ("*Brady* does not, however, require the prosecution to disclose all exculpatory and impeachment material; it need disclose only material 'that, if suppressed, would deprive the defendant of a fair trial.'").

And in any event, as the Second Circuit has held, "*Brady* and its progeny do not require immediate disclosure of all exculpatory and impeachment material upon request by a defendant." *Coppa*, 267 F.3d at 146. Rather, the Government must "disclose *Brady* and *Giglio* material in time for its effective use at trial or at a plea proceeding." *Id.*; *see also United States v. Abrams*, 539 F. Supp. 378, 390 (S.D.N.Y. 1982) ("*Brady*, however, does not require the government to disclose information pertaining to the credibility of witnesses before that witness testifies.") (internal citation omitted).

The Government is aware of its continuing obligation promptly to produce *Brady* material, and will do so should any such material come to light. *See United States v. Birkett*, No. 99-CR-338 (RWS), 1999 WL 689992, at *6 (S.D.N.Y. Sept. 2, 1999) ("Courts in this Circuit have repeatedly denied pretrial requests for discovery orders pursuant to *Brady* where the Government, as here, has made a good-faith representation to the Court and defense counsel that it recognizes and has complied with its disclosure obligations under *Brady*."). And, as noted, the Government intends to make earlier disclosures of 3500 material and discoverable impeachment material, which will give the defense more than sufficient time to make effective use of such material at trial.

Accordingly, the defendant's request for an order compelling the immediate disclosure of any *Brady* material is unnecessary and should be denied.

11

## CONCLUSION

For the foregoing reasons, the defendant's motions should be denied.


Dated:   New York, New York
         February 21, 2020

                                        Respectfully submitted,

                                        GEOFFREY S. BERMAN
                                        United States Attorney
                                        Southern District of New York

                              By: _____ */s/* _____
                                        Thomas A. McKay
                                        Jarrod L. Schaeffer
                                        Assistant United States Attorneys
                                        Tel.: (212) 637-2268 / 2270