UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------X
           :
UNITED STATES OF AMERICA,       :
           :
   *-against-*           :      19-CR-472 (PAC)
           :
Salvatore Tagliaferro,           :      **OPINION & ORDER**
           :
   *Defendant*           :
           :
-------------------------------------------------------X

The District Council of New York City and Vicinity of the United Brotherhood of Carpenters and Joiners of America (the "Union") moves to quash two subpoenas *duces tecum* that were served by Defendant Salvatore Tagliaferro. For the reasons set forth below, the motion to quash is **GRANTED**.

## BACKGROUND

In June 2019, Tagliaferro was arrested and charged with alleged criminal acts when he was President of the Union's Local Chapter 926. There are three counts: (1) conspiracy to convert labor union property and commit honest services wire fraud, in violation of 18 U.S.C. § 371; (2) conversion of union assets, in violation of 29 U.S.C. § 501(c) and 18 U.S.C. § 2; and (3) honest services wire fraud, in violation of 18 U.S.C. §§ 1343, 1346, and 2. (ECF 2.) Tagliaferro will stand trial beginning on April 5, 2021.

In preparation of his defense, Tagliaferro served a subpoena *duces tecum* (the "Subpoena") on the Union's Inspector General Office.[1] (Union Mot., Exhibit A, ECF 82.) The Subpoena reads:

---

[1] The Union operates under a 1994 Consent Decree with the Government. (Union Mot. at 3.) Under the consent decree, the court appoints "a series of [independent] monitors" to oversee the

1

> This subpoena calls for the production of all documents within the control, custody, and/or possession of the Inspector General's Office that relates to any investigation and inquiry into allegations of the improper insurance of union membership cards to applicants to Local 926 of the United Brotherhood of Carpenters and Joinders of America for the years 2017, 2018, and 2019.[2]

(*Id.*)

Following service, the Union and Tagliaferro conferred about narrowing the scope of the Subpoena. (*Id.* at 1–2.) That meeting, however, proved to be futile. (*Id.*) As a result, the Union filed a motion to quash the Subpoena pursuant to Rule 17(c) of the Federal Rules of Criminal Procedure. (*Id.*)

In support of its motion to quash, the Union principally contends that the Subpoena is overly broad in its production request. (*Id.* at 6.) The Union also contends that the law enforcement privilege protects the materials sought by the Subpoena. (*Id.* at 5.) Tagliaferro responds that the Union possesses exculpatory evidence that is relevant to his defense, and because the Government has not produced such documents as required under *Brady v. Maryland*, 373 U.S. 183 (1963), that he can only obtain this evidence directly from the Union.[3] (Tagliaferro Resp. at 1, ECF 89.)

---

operations of the Union. (*Id.*) The current monitor is Glen G. McGorty, who has served in that role since January 2015. (*Id.*)

[2] The Subpoena further defines "documents" as:

> [A]ny and all documents and records, in whatever form kept, including, but not limited to, writings, emails, text messages, messages sent through "apps" or social media accounts, memorandum of interviews of witnesses, drawings, graphs, charts, calendar entries, photographs, audio or visual recordings, images, and other data or data compilations, and includes material on both paper and in electronic form. (Union Mot., Exhibit A.)

[3] In a letter dated October 30, 2020, the Government states that it has "periodically received" documents from the Union, which it has either already produced to Tagliaferro or will produce in

2

The Court ordered a one week meet-and-confer between the parties to discuss the possibility of agreeing to a narrower production request. (ECF 91.) The parties failed to reach an agreement. Tagliaferro, however, proposed a more narrowly tailored subpoena *duces tecum* ("Amended Subpoena"), which asks for:

1. Any documents, reports, or information in the possession and/or control of the District Council indicating that Defendant Tagliaferro had no knowledge that co-defendant John DeFalco had been receiving cash payments in exchange for membership in Local 926 of the United Brotherhood of Carpenters and Joinders of America ("Local 926").

2. Any documents, reports, or information in the possession and/or control of the District Council indicating that Defendant Tagliaferro had no intent to commit the crimes charged in the instant Indictment.

3. Any documents, reports, or information in the possession and/or control of the District Council indicating that Defendant Tagliaferro had a motive – other than money – to increase the membership of Local 926.

(Tagliaferro Second Resp., ECF 92.)

The Union now moves to quash both the Subpoena and Amended Subpoena. (Union Reply, ECF 93.) The Court grants the motion.

---

advance of trial. (Gov't Letter, ECF 94.) The Government also stated that none of the Union documents in its current possession implicates the production requests set forth in the Amended Subpoena. (*Id.*)

3

## **DISCUSSION**

### I. **Applicable Law**

Rule 17(c)(2) of the Federal Rules of Criminal Procedure provides that, "On motion made promptly, the court may quash or modify the subpoena if compliance would be unreasonable or oppressive." Fed. R. Crim. Proc. 17(c)(2). To survive a motion to quash, the party seeking production must prove, by a preponderance of the evidence, that its subpoena *duces tecum* satisfies the four-part test set forth in *United States v. Nixon*, 418 U.S. 683, 699–700 (1974). *See United States v. Pena*, No. 15-CR-551 (AJN), 2016 WL 8735699, at *2 (S.D.N.Y. Feb. 12, 2016). Under *Nixon*, "the materials sought to be produced" must be "(1) relevant, (2) admissible, (3) specifically identified, and (4) not otherwise procurable." *United States v. Cognetta*, No. 18 CR 14 (VM), 2019 WL 4198544, at *2 (S.D.N.Y. Aug. 13, 2019) (citing *Nixon*, 418 U.S. at 699–700). If these four factors are not met, then the subpoena *duces tecum* is deemed "unreasonable or oppressive" and must be quashed under Rule 17(c)(2). *Nixon*, 418 U.S. at 699–700 (explaining these factors as "burdens" the seeking party must "carry"). "Conclusory statements are insufficient to satisfy the *Nixon* requirements." *United States v. Barnes*, No. S9 04 CR 186 SCR, 2008 WL 9359654, at *3 (S.D.N.Y. Apr. 2, 2008).

The chief purpose of Rule 17(c) subpoenas is to "expedite the trial by providing a time and place before trial for the inspection of the subpoenaed materials." *See Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 (1951). The rule is not meant to "provide an additional means of discovery" in criminal cases. *Id.* Thus a broadly drawn and unspecific subpoena *duces tecum* must be quashed under Rule 17(c). *See United States v. Iozia*, 13 F.R.D. 335, 338 (S.D.N.Y.

4

1952) (explaining that Rule 17(c) does not permit a "general fishing expedition"); *see also Nixon*, 418 U.S. at 699–700.[4]

## II. Application

### A. The Subpoena

Because the Subpoena does not satisfy *Nixon*'s four-part test, the Court concludes that it must be quashed under Rule 17(c)(2). Specifically, the Subpoena does not satisfy the specificity requirement under *Nixon*. 418 U.S. at 699–700. The Subpoena broadly requests production of "all documents . . . that relate[] to any investigation and inquiry" by the Union into "the improper insurance of union membership cards" from 2017 to 2019. (Union Mot., Exhibit A.) Moreover, the Subpoena defines "[d]ocuments" in a breathtakingly broad manner: as "*any* and *all* documents and records, in *whatever* form kept[.]" (*Id.*) (emphasis added). The terms employed here—"any," "all," and "whatever"—do not evince specificity. *Cf. United States v. Carroll*, No. 19 CR 545 (CM), 2020 WL 104813, at *2 (S.D.N.Y. Jan. 9, 2020) (finding subpoena asking for "every email" to be "wildly overbroad"); *United States v. Avenatti*, No. S119CR373PGG, 2020 WL 508682, at *5 (S.D.N.Y. Jan. 31, 2020) ("In seeking all communications that reference Avenatti over a nine-month period following Avenatti's March 25, 2019 arrest, the Defendant

---

[4] Tagliaferro argues that the more lenient reading of Rule 17(c) proposed by Judge Scheindlin in *United States v. Nachamie*, 91 F.Supp.2d 552, 562 (S.D.N.Y. 2000), should apply instead of *Nixon*. In *Nachamie*, Judge Scheindlin stated that in cases where a defendant seeks to enforce a subpoena *duces tecum* against a third party that is not the Government, all Rule 17(c) requires is that the subpoena be (1) reasonable or "material to the defense" and (2) "not unduly oppressive[.]" *Id.* at 563. This conclusion flowed from Judge Scheindlin's view that *Nixon*'s stringent four-part test was at odds with the plain text of Rule 17(c). However, because *Nixon* has not been displaced as precedent, this Court must apply it, as other courts in this district "almost unanimously" have done. *See United States v. Skelos*, No. 15-CR-317 (KMW), 2018 WL 2254538, at *1 (S.D.N.Y. May 17, 2018) (collecting cases).

5

sweeps too broadly."). At bottom, the Subpoena reads like a discovery request, which is not permitted under Rule 17(c). *See Bowman Dairy Co.*, 341 U.S. at 220; *see also United States v. Cherry*, 876 F. Supp. 547, 552 (S.D.N.Y. 1995) (cautioning courts to "be careful that [R]ule 17(c) is not turned into a broad discovery device, thereby undercutting the strict limitation of discovery in criminal cases found in [Rule] 16") (cleaned up).

Tagliaferro's arguments that the Subpoena satisfies the specificity requirement under *Nixon* must be rejected. On the issue of specificity, Tagliaferro argues that the Subpoena was made in "good faith" and that he is entitled, under the Federal Constitution, to compulsory process and the opportunity to "obtain evidence." (Tagliaferro Resp. at 3.) But while this may all be true, these allegations do not bear on the narrow issue of specificity. Accordingly, Tagliaferro has not met his burden under *Nixon* and the motion to quash must be granted with respect to the Subpoena. 418 U.S. at 699–700.

### B.     Amended Subpoena

The Court also concludes that the Amended Subpoena must be quashed, but on different grounds than the Subpoena. It should be noted at the outset that the Amended Subpoena considerably narrows the universe of materials sought from the Union. *See supra* 3. But specificity is only one of the four conjunctive factors required under *Nixon*, and here, the admissibility requirement remains unsatisfied. 418 U.S. at 699–700; *see Cherry*, 876 F. Supp. at 552 ("[I]n order to be procurable by means of a Rule 17(c) subpoena, materials must themselves be admissible evidence."). In his moving papers, Tagliaferro sets forth no explanation for how the materials sought in the Amended Subpoena will be admissible at trial. *See Barnes*, 2008 WL 9359654, at *4 (quashing subpoena because defendant "fails to even proffer a reason for how the evidence sought would be admissible at all"). That is particularly concerning here where the

Amended Subpoena expansively requests production of "[a]ny documents, reports, or information[.]" (Tagliaferro Second Resp. at 1.) At trial, any number of such documents could "likely constitute hearsay or contain privileged material which could render them inadmissible." *Barnes*, 2008 WL 9359654, at *4. Thus because Tagliaferro has not met his burden of proving admissibility, the Court concludes that the Amended Subpoena must be quashed. *Nixon*, 418 U.S. at 699–700.

Finally, though the parties expend much of their breath on the Union's invocation of the law enforcement privilege, the Court need not reach this issue. Whether the law enforcement privilege defense applies to the Union is relevant only if the Amended Subpoena is presumptively enforceable under Rule 17(c) and *Nixon*. *See Pena*, 2016 WL 8735699, at *2. For the foregoing reasons, the Subpoena and Amended Subpoena are unenforceable. So the Union's motion to quash must be granted.[5]

---

[5] The Union misconstrues Tagliaferro's *Brady* argument. (Union Reply at 2.) Tagliaferro does not argue that the Union's Inspector General office is a law enforcement agency that must abide by *Brady* and thus that it must produce the requested documents in the Amended Subpoena. (Tagliaferro Second Resp. at 2.) Instead, Tagliaferro's position is that the Inspector General's office is *not* a law enforcement agency entitled to the privilege, but "assuming *arguendo*" that it is, disclosure of the relevant documents would be required under *Brady*. (*Id.*) The critical point here is that, according to Tagliaferro, the Amended Subpoena, not *Brady*, forces the Union's hand. But as this Court has discussed, because the Amended Subpoena does not satisfy the *Nixon* factors, it need not address the law enforcement privilege issue and the potential implications that the privilege may bring to the fore under *Brady*.

## **CONCLUSION**

Although the motion to quash is **GRANTED**, Tagliaferro is free to serve another subpoena *duces tecum* on the Union that comports with the four factors set forth under *Nixon*, 418 U.S. at 699–700.

Dated: New York, New York
       March 16, 2021

SO ORDERED

_____
PAUL A. CROTTY
United States District Judge