UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------X

UNITED STATES OF AMERICA,

     - against -                                      19 Cr. 472 (PAC)

SALVATORE TAGLIAFERRO, et al,                  DECLARATION

                 Defendant.

-----------------------------------------------------X

MICHAEL K. BACHRACH, Esq., under penalty of perjury pursuant to 28 U.S.C.§1746 hereby swears and affirms:

1.     I, along with Richard H. Rosenberg, Esq., are the attorneys of record for Defendant Salvatore Tagliaferro.

2.     Both pre-trial and post-trial I was joined by Richard H. Rosenberg, Esq. During trial, I was joined by Susan Kellman, Esq., who tried the case with me after an injury briefly hospitalized Mr. Rosenberg on the eve of trial.

3.     This Declaration is being submitted to memorialize the safety protocols implemented in the Southern District of New York as a prerequisite to the resumption of criminal trials during the COVID-19 pandemic in order to complete the record on this issue for purposes of appeal.

4.     All of the facts set forth herein are known to me personally unless specifically stated upon information and belief.

5.     Mr. Tagliaferro's trial began on April 20, 2021, and reached a jury verdict on April 28, 2021. There were in total seven trial days including jury selection and jury deliberations.

6.     Pursuant to the Southern District of New York's 2020 Phased Re-Entry Plan and the Southern District of New York's 2020-21 Phased Re-Entry Plan (COVID-19) (collectively, "COVID Re-Entry Plans"), several courtrooms were reconfigured to comply with safety measures recommended by epidemiologists who had been retained by the District to assist the District in attempting to create a safe environment to permit the resumption of trials during the COVID-19 pandemic.

7.     Reconfiguration of those courtrooms, specifically designated for trials, included shifting the position of counsel tables, extending the size of the jury box into the public gallery, and creating plexiglass boxes around the witness box and attorney lectern.

8.     The plexiglass boxes around the witness box and attorney lectern created a three-sided enclosure with a plexiglass top which permitted the witness and attorney to enter their respective boxes from behind.

9.     The plexiglass boxes were affixed with HEPA filters, which were described to us as being "hospital grade".

10.     Pursuant to the COVID Re-Entry Plans, only single and two-defendant trials were permitted to proceed due to space limitations and the need to enforce six-foot social distancing.

11.     Upon information and belief, in cases in which more than two defendants were charged, the Government was directed by the Court to select which two defendants were to proceed at a time; the remaining defendants then had their trials continued to future dates irrespective of any Speedy Trial or other objection.

12.     During Mr. Tagliaferro's jury selection and trial, all participants (including the jury, counsel for both parties, their staffs, the defendant, Judge Crotty, judicial and courtroom staff, and the public) were required to maintain six-foot social distancing.

13. Intercom telephones were installed on each parties' table to permit each individual seated at their respective table to speak with the other individual seated at that same table while still maintaining a six-foot social distance. For example, for the Government attorneys to be able to speak clearly to each other or their paralegal while trial was in session, they would need to use the intercom phone to speak with each other. Similarly, when defense counsel needed to speak to the defendant or paralegal, we were likewise required to use the intercom phone.[1]

14. There was one long table set up facing Judge Crotty at which the Government's two lawyers and one paralegal sat during trial.

15. There were two separate tables set up facing the jury, one table in front of the other, for defense use. At trial Ms. Kellman sat at the front table with Mr. Tagliaferro, and I sat at the back table with the defense paralegal. Ms. Kellman was seated directly in front of me, and Mr. Tagliaferro was seated directly in front of the defense paralegal. As a result, Ms. Kellman and Mr. Tagliaferro was seated closest to the jury whereas I and the defense paralegal were seated closest to the attorney lectern.

16. The use of cellular telephones to text message and laptop computers to email between counsel and our respective staffs was also permitted in court during trial as an alternative to the use of the intercom phone.

17. All participants in the trial – including counsel for both parties, Judge Crotty, Judge Crotty's staff, all other courtroom staff, and the jury – *were at all times required* to keep their masks on *even if they were vaccinated*. No participant was permitted the discretion to remove their mask during trial. The same was true for all public spectators.

---

[1] There were times at trial when the Government's counsel spoke quietly to each other without the use of the intercom phone, and also times when defense counsel spoke quietly to each other, the defendant, or our paralegal rather than use the intercom phone, but six-foot social distancing was still required as a rule.

18.     The only exception to the mask requirement was for the testifying witness when seated *within* the plexiglass, HEPA-filtered, witness box, and for the attorney examining the witness or making arguments when standing *within* the plexiglass, HEPA-filtered, attorney lectern.[2]

19.     The same social distancing was required during jury selection, and as such jury selection took place in the central jury room on the ground floor of the 500 Pearl Street courthouse – a much larger space that in pre-pandemic times was used as a waiting room that would generally accommodate sufficient potential jurors to select all trials beginning on any given day.

20.     The same mask requirements were in place during jury selection. As such, all counsel, the defendant, Judge Crotty, judicial and courtroom staff, and all potential jurors, were required to keep their masks on at all times during *voir dire*.

21.     In additional to the above requirements, hand sanitizing, temperature screening, and daily health questionnaires were also required.

Dated: New York, New York
        September 7, 2021

                                            Respectfully submitted,

                                            Michael K. Bachrach

---

[2]     Judge Crotty also removed his mask while instructing the jury on the law at the conclusion of the evidence in the case, but Judge Crotty likewise sat *inside* the plexiglass, HEPA-filtered, witness box while doing so and did not remove his mask except while within that protected enclosure.