UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

United States of America,

v.

Salvatore Tagliaferro,

*Defendant*.

19 Cr. 472 (PAC)

**MEMORANDUM OF LAW OF THE UNITED STATES OF AMERICA
IN OPPOSITION TO THE DEFENDANT'S MOTIONS
FOR BAIL PENDING APPEAL AND FOR A STAY OF ENFORCEMENT OF THE
RESTITUTION AND FORFEITURE ORDERS**

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York

Thomas McKay
Jarrod L. Schaeffer
Assistant United States Attorneys
  *Of Counsel*

**TABLE OF CONTENTS**

BACKGROUND .................................................................................................................................. 1
ARGUMENT ...................................................................................................................................... 3
   I. Legal Standard ....................................................................................................................... 3
   II. The Defendant's Motion for Bail Pending Appeal Should Be Denied ................................. 4
   III. The Defendant's Motion for a Stay of His Financial Obligations Should be Denied .......... 9
   IV. The Court Should Not Stay the Defendant's Surrender Date ............................................ 11
CONCLUSION ................................................................................................................................. 12

# TABLE OF AUTHORITIES

**Cases**

*Kramer v. United States*, 139 F. App'x 234 (11th Cir. 2005) .......................................................... 8

*Morris v. Slappy*, 461 U.S. 1 (1983) ................................................................................... 6, 7, 9

*Spikes v. Mackie*, 541 F. App'x 637 (6th Cir. 2013) ...................................................................... 7

*United States v. Abuhamra*, 389 F.3d 309 (2d Cir. 2004) ...................................................... 3, 4, 5

*United States v. Giancola*, 754 F.2d 898 (11th Cir. 1985) .......................................................... 3, 6

*United States v. Gonzalez-Lopez*, 548 U.S. 140 (2006) ................................................................... 9

*United States v. Griffiths*, 750 F.3d 237 (2d Cir. 2014) .................................................................. 7

*United States v. Hochevar*, 214 F.3d 342 (2d Cir. 2000) ................................................................ 4

*United States v. Miller*, 753 F.2d 19 (3d Cir. 1985) ....................................................................... 3

*United States v. Parlato*, No. 15-CR-149-A,
   2021 WL 1884106 (W.D.N.Y. May 11, 2021) .................................................................. 5, 6, 8

*United States v. Randell*, 761 F.2d 122 (2d Cir. 1985) ................................................................ 3, 6

*United States v. Razzouk*, No. 11-CR-430 (ARR),
   2018 WL 3574868 (E.D.N.Y. July 25, 2018) ....................................................................... 10

*United States v. Schmidt*, 105 F.3d 82, 89 (2d Cir. 1997) ............................................................. 6

*United States v. Silver*, No. 15-CR-93 (VEC),
   2018 WL 4440496 (S.D.N.Y. Sept. 17, 2018) .................................................................. 10, 11

*United States v. Vilar*, 05 Cr. 621 (RJS) (S.D.N.Y. Oct. 22, 2019) ............................................. 10

*United States v. Watkins*, 940 F.3d 152 (2d Cir. 2019) ................................................................. 4

*Wheat v. United States*, 486 U.S. 153 (1988) ............................................................................ 6, 8

**Statutes**

18 U.S.C. § 3143 ................................................................................................................ *passim*

## BACKGROUND

The Government respectfully submits this memorandum of law in opposition to post-trial motions filed by Salvatore Tagliaferro (hereinafter, "Tagliaferro" or the "defendant"), which seek (*i*) bail pending appeal; (*ii*) a stay of enforcement of the Court's forfeiture and restitution orders; and (*iii*) and, in the alternative, a stay of Tagliaferro's surrender date and any payment of his restitution and forfeiture obligations.  (*See* Br. 14.)[1]  The motions should be denied.

As the Court is aware, Indictment 19 Cr. 472 (PAC) (the "Indictment") was filed on or about June 20, 2019, charging the defendant with one count of conspiracy to convert property of a labor union and commit honest services wire fraud, in violation of 18 U.S.C. § 371 ("Count One"); one count of converting union assets, in violation of 29 U.S.C. § 501(c) and 18 U.S.C. § 2 ("Count Two"); and one count of honest services wire fraud, in violation of 18 U.S.C. §§ 1343, 1346, and 2 ("Count Three").  Those charges stemmed from a long-running scheme during which the defendant and his co-defendant, John DeFalco, both of whom were officers of local chapters of the United Brotherhood of Carpenters and Joiners of America (the "Union"), abused their positions of authority to solicit and accept cash bribes from prospective union members in exchange for securing the bribe payors' admission into the Union.

As the evidence at trial established, at all times relevant to this case, the defendant was the President of the Local 926 chapter of the Union, a position he had held since at least in or about 2011.  As president of that chapter, the defendant exercised exclusive control over who was

---

[1] As used herein, "Br." refers to the defendant's brief in support of his motion (ECF No. 199); "Trial Tr." refers to the transcript of the defendant's trial and preliminary proceedings; and "Sent. Tr." refers to the transcript of the defendant's sentencing.  Unless otherwise noted, case text quotations omit all internal quotation marks and alterations.

admitted to the Local 926, and thus he was able to secure admission for prospective members who paid bribes. The defendant also was a council representative and employee of the New York City District Council of Carpenters and Joiners of America (the "District Council"), a representative body comprised of nine individual local chapters of the Union, since at least in or about 2017. The Union rules and by-laws imposed on the defendant a duty to provide honest services to the Union and his local chapter. Instead, the defendant defrauded the Union of its right to his honest services, and unlawfully converted Union property by conspiring to sell admission into the Local 926 in exchange for cash bribes.

The defendant's trial commenced on April 20, 2021. The Government's proof at trial included, among other things: (*i*) testimony from nine witnesses, including, among others, co-conspirators DeFalco and Matthew Keethe, who testified about the defendant's involvement in the bribery scheme; (*ii*) bank records reflecting thousands of dollars in cash deposits into the defendant's bank account over the course of the scheme; (*iii*) license plate reader ("LPR") records documenting the defendant's trips into Manhattan to split bribe money with DeFalco; and (*iv*) text messages between the defendant and DeFalco about the bribery scheme.

On April 28, 2021, the jury returned guilty verdicts against the defendant on all counts, and the Court later denied the defendant's motions for acquittal and a new trial on July 1, 2021. On September 8, 2021, the Court imposed concurrent sentences of sixty (60) months on each count of conviction, and ordered the defendant to forfeit $296,400.00 and pay restitution in the amount of $145,065.33.[2] Final judgment was entered by the Court on September 9, 2021.

---

[2] The Court orally imposed restitution and forfeiture at sentencing. Subsequently, the Government submitted proposed written orders, which the Court entered on September 14, 2021. (*See* ECF Nos. 190–91.)

2

## ARGUMENT

### I. Legal Standard

Title 18, United States Code, Section 3143(b) governs whether a defendant may be released on bail pending appeal. In relevant part, Section 3143(b)(1) provides that a court "shall order that a person who has been found guilty of an offense and sentenced to a term of imprisonment" be detained pending appeal, unless the court finds "by clear and convincing evidence that the person is not likely to flee or pose a danger to any other person or the community if released," "that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in . . . (i) reversal, (ii) an order for a new trial, (iii) a sentence that does not include a term of imprisonment, or (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process." 18 U.S.C. § 3143(b)(1). In other words, following a guilty verdict and sentencing, there is a "presumption in favor of detention." *United States v. Abuhamra*, 389 F.3d 309, 319 (2d Cir. 2004). That presumption reflects Congress's view that "[o]nce a person has been convicted and sentenced to jail, there is absolutely no reason for the law to favor release pending appeal or even to permit it in the absence of exceptional circumstances." *United States v. Miller*, 753 F.2d 19, 22 (3d Cir. 1985) (quoting H. Rep. No. 907, 91st Cong., 2d Sess., at 186–87 (1970)).

A "substantial question" is "a 'close' question or one that very well could be decided the other way." *United States v. Randell*, 761 F.2d 122, 125 (2d Cir. 1985) (quoting *United States v. Giancola*, 754 F.2d 898, 901 (11th Cir. 1985)). "If a court does find that a question raised on appeal is 'substantial,' it must then consider whether that question is 'so integral to the merits of the conviction on which defendant is to be imprisoned that a contrary appellate holding is likely to require reversal of the conviction or a new trial.'" *Id.* (quoting *Miller*, 753 F.2d at 23). With respect to all of these issues, "the burden of persuasion rests on the defendant." *Id.* Put differently,

a defendant bears the burden of "rebut[ting] that presumption with clear and convincing evidence . . . ." *Id.* Ultimately, whether to release the defendant on bail pending appeal is firmly committed to this Court's discretion, and its decision is subject to "deferential review." *United States v. Watkins*, 940 F.3d 152, 158 (2d Cir. 2019); *see also United States v. Hochevar*, 214 F.3d 342, 344 (2d Cir. 2000).

## II. The Defendant's Motion for Bail Pending Appeal Should Be Denied

The evidence presented at trial overwhelmingly demonstrated that Tagliaferro acted in concert with DeFalco and others to solicit and receive payments from individuals in exchange for securing their admission into the Union. This Court subsequently rejected the very arguments the defendant intends to offer on appeal in a thorough, well-reasoned opinion. (ECF No. 176.) Because the defendant's motion does not come close to establishing any "substantial question of law or fact likely to result in . . . a reversal" or any other relief contemplated by the statute, 18 U.S.C. § 3143(b)(1), Tagliaferro has failed to overcome the "presumption in favor of detention," *Abuhamra*, 389 F.3d at 319, and his request should be denied.

The defendant's motion is grounded entirely on his contention that he "was deprived of his Sixth Amendment right to counsel of choice by requiring him to proceed to trial without the lead attorney that had been retained specifically for that purpose." (Br. 1.) In its opinion issued in July 2021, this Court correctly rejected that claim. (*See* ECF No. 176 at 8–11.) Specifically, after briefing and careful analysis, the Court held that "Tagliaferro's right to counsel of choice was *never* abridged in the instant case," and that "Tagliaferro was effectively represented at trial by not one, but two, capable attorneys of his own choosing" because, among other reasons, "[a]t trial Tagliaferro was represented by Mr. Bachrach, who had represented Tagliaferro in this case since its inception in June 2019," "the Court promptly honored Tagliaferro's request to appoint CJA counsel, Ms. Kellman, as a replacement for Mr. Rosenberg," and "in that written request,

4

Tagliaferro assured the Court [that] 'With Ms. Kellman's assistance, together we can be prepared to proceed to trial on April 20, 2021.'" (ECF No. 176 at 8–9 (emphasis omitted).) In the alternative, the Court further found that "even if Mr. Rosenberg's absence did somehow deprive Tagliaferro of his right to counsel of choice," there "was still no violation of the Sixth Amendment given the compelling justifications for proceeding to trial on April 20."[3] (*Id.* at 9.)

The defendant acknowledges that the Court has squarely rejected his Sixth Amendment claim (*see* Br. 1, 5), but argues that since "at least one court within this Circuit has ruled with the defense under similar circumstances," there is "*a reasonable possibility* that the Second Circuit may rule contrary to this Court on this issue." (*Id.* (emphasis added).) Even assuming the case cited by Tagliaferro is apposite – and, for the reasons explained herein, it is not – his claim is insufficient to warrant bail pending appeal. That is because Section 3143(b) requires a "clear and convincing" showing that an appeal will raise a "substantial question of law or fact" in order to overcome the "presumption in favor of detention," *Abuhamra*, 389 F.3d at 319. (Br. 1.) Here, however, Tagliaferro's argument rests on his assertion that another judge decided a similar issue differently in *United States v. Parlato*, No. 15-CR-149-A, 2021 WL 1884106 (W.D.N.Y. May 11, 2021). (*See* Br. 8–10.) That argument fails because it confuses outcome with error. As even the *Parlato* decision noted, a judge has "broad discretion" in this area, *id.* at *1, and the fact that a different judge in a different district in a different case exercised his discretion in a manner that led to a different result does not mean that a reversal on appeal is likely in this case. *See also id.*

---

[3] In particular, the Court noted concerns about (*i*) "Tagliaferro's strained finances"; (*ii*) "his interest in promptly proceeding to trial"; (*iii*) "the risk of significant delay" given the inflexible nature of scheduling trials during the pandemic; (*iv*) the lack of any prior request for an adjournment to June 2021; and (*v*) that fact that Tagliaferro "got exactly what he asked for when the Court adjourned the trial from April 5 to April 20." (ECF No. 176 at 9–11.)

at \*2 ("There should be no doubt that unavailability of a defendant's counsel of choice does not dictate a federal court's criminal trial schedule."); *accord Morris v. Slappy*, 461 U.S. 1, 11 (1983) (broad discretion must be granted to trial courts on continuances). In other words, even if *Parlato* were on all fours here and the Second Circuit thought the *Parlato* court correctly granted a continuance,[4] affirmance would still be proper in this case as this Court's decision was well within its broad discretion. Thus, Tagliaferro's appeal will not raise a "substantial" question "likely to result" in reversal.

In any event, this Court's prior ruling is firmly grounded in governing precedent, and the defendant's arguments do not raise "a 'close' question or one that very well could be decided the other way." *Randell*, 761 F.2d at 125 (quoting *Giancola*, 754 F.2d at 901). It is well-established that, "[b]ecause the right to counsel of one's choice is not absolute, a trial court may require a defendant to proceed to trial with counsel not of [the] defendant's choosing," so long as the defendant is not compelled to proceed with "incompetent counsel." *United States v. Schmidt*, 105 F.3d 82, 89 (2d Cir. 1997); *see also Wheat v. United States*, 486 U.S. 153, 159 (1988) ("[T]he essential aim of the [Sixth] Amendment is to guarantee an effective advocate for each criminal

---

[4] As noted above, *Parlato* is not apposite here. In *Parlato*, the district court considered a request to adjourn a trial because "[o]ne of defendant Parlato's retained counsel," who was to serve as "secondary counsel," had "a trial scheduling conflict that preclude[d] him from further participating in the defendant's case until another complex and lengthy federal criminal trial" in another district had concluded. 2021 WL 1884106 at \*1. Without that lawyer, the defendant was represented by "two well-respected counsel . . . more than competent enough to handle the trial." *Id.* In exercising its discretion to grant the adjournment – a decision the court termed "a very close call" in "unique circumstances," *id.* at \*5 – it noted that discovery was voluminous and the evidence was "relatively complex"; the Government "expect[ed] to call more than 40 witnesses"; the "defendant expect[ed] to put on a case" involving "an advice-of-counsel defense"; and the trial was expected to last "at least eight weeks." *Id.* at \*3. Those facts bear no resemblance to this case. Moreover, the court also stated that it was "important . . . no individual victims' interests [we]re implicated by the proposed adjournment." *Id.* at \*4. *Parlato* is therefore readily distinguishable.

defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers."). Further, it is settled law that "a district court has a great deal of latitude in scheduling trials, and need not grant a continuance so that a defendant may be represented by counsel of his choosing, where such a continuance would cause significant delay." *United States v. Griffiths*, 750 F.3d 237, 241–42 (2d Cir. 2014). Consistent with those precedents and principles, this Court correctly concluded that the defendant was not deprived of any right to his "counsel of choice," since he was ably represented at trial by his second retained lawyer and another attorney appointed at his request. *See id.* at 240 (denying challenge where the district court appointed new counsel to give the defense summation following a brief adjournment after current counsel suffered two strokes and was hospitalized); *see also Morris*, 461 U.S. at 11 (finding right to "counsel of choice" was not violated where trial court refused continuance even though defendant's counsel of choice was hospitalized); *Spikes v. Mackie*, 541 F. App'x 637, 652 (6th Cir. 2013) ("[T]he fact that [the defendant's attorney] was seriously ill and unable to represent him does not mean [the defendant] was denied the right to counsel of choice. As the trial court and district court properly recognized, a defendant's right to counsel of choice is not violated when his retained counsel becomes unavailable and the court requires him to proceed with designated counsel.").

Nothing in the defendant's motion suggests that the appellate arguments he intends to advance will raise a "substantial" legal question likely to result in a reversal of this Court's decision. Much of that motion merely repackages arguments properly rejected by this Court.[5]

---

[5] Indeed, portions of Tagliaferro's motion appear to be taken verbatim from his prior submission to this Court. For example, the defendant again asserts that "all cases providing examples of when the [Sixth Amendment] right may be permissibly infringed relate to proceedings in which the counsel of choice was disqualified due to a conflict – be it a *per se*, actual, or potential conflict –

7

And in "arguing that this Court's reasoning was flawed," the defendant misstates the bases for the Court's holding. (Br. 8.) Cherry-picking words from the Court's analysis, Tagliaferro attempts to recast the Court's decision as focusing merely on the "effectiveness" of his attorneys at trial, then insists that the "effectiveness of their representation" is "irrelevant to the analysis." (*Id.*) In fact, however, this Court carefully evaluated the facts surrounding the defendant's representation before concluding "that Tagliaferro was effectively represented at trial by not one, but two, capable attorneys *of his own choosing*" under the appropriate standard.[6] (ECF No. 176 at 9 (emphasis added).)

The Sixth Amendment does not "ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Wheat*, 486 U.S. at 159; *cf. Kramer v. United States*, 139 F. App'x 234, 235 (11th Cir. 2005) (finding, in a case where the defendant was represented at trial by two attorneys, Krieger and Bonner, and "stated that he hired Krieger to be lead counsel and viewed Bonner as an assistant," that the defendant was not denied his "counsel of choice" when Krieger became ill, could not continue the trial, and the district court required the defendant to proceed with Bonner). And despite his protestations to the contrary, Tagliaferro's argument boils down to a claim that he had an absolute right to his preferred counsel regardless of the circumstances – a position clearly contrary to settled law.[7] Moreover, Tagliaferro's absolutist position would imbue

---

which the court determined could not be waived." (Br. 7.) As the Government noted in its prior submission, that assertion is incorrect. (*See* ECF No. 175 at 17 n.7.)

[6] The Court further observed that "at no point during the trial did Tagliaferro or his counsel object to the absence of Mr. Rosenberg from the proceedings." (ECF NO. 176 at 9.)

[7] Indeed, Tagliaferro even appears to argue that it would violate the Sixth Amendment to require him "to proceed to trial with the lead counsel of his choice *but not the second seat of his choice . . . .*" (Br. 9 n.1 (emphasis added).) Notably, to the extent *Parlato* addressed this question, it treated the issue as a matter of first impression. *See* 2021 WL 1884106 at *2. The Court need not address that question here, since no issue of any denial "secondary counsel" is presented in this case.

defendants with unilateral control over the scheduling of trials, while divesting courts of the wide latitude they traditionally exercise with respect to these matters. *Compare Morris*, 461 U.S. at 11 ("Trial judges necessarily require a great deal of latitude in scheduling trials," and the challenge "of assembling the witnesses, lawyers, and jurors at the same place at the same time, . . . counsels against continuances except for compelling reasons."); *see also United States v. Gonzalez-Lopez*, 548 U.S. 140, 152 (2006) (observing that courts should "balance the right to counsel of choice against the needs of fairness, and against the demands of [the Court's] calendar"). That is not the law.

Accordingly, the defendant's motion for bail pending appeal should be denied.

### III. The Defendant's Motion for a Stay of His Financial Obligations Should be Denied

As discussed at length herein, the defendant's arguments regarding reversal are meritless. Similarly, his arguments regarding irreparable injury supposedly resulting from his forfeiture and restitution obligations rest on false premises. Specifically, the defendant elides his *obligation* to satisfy the amounts imposed in the Court's judgment with the actual *payment* of those amounts, incorrectly suggesting that he must *pay* "a lump sum of $441,765.33 . . . immediately," including the $145,065.33 he owes in restitution. (Br. 12–13.) That is misleading. The hardships posited by the defendant may result, if at all, as a result of *payment* of his financial obligations – not the mere imposition of those obligations in the judgment. And for the reasons explained below, there is no immediate and irreparable injury caused by any payments at this stage.

Pursuant to Federal Rule of Criminal Procedure 32.2, "[i]f a defendant appeals from a conviction or an order of forfeiture, [a] court may stay the order of forfeiture on terms appropriate to ensure that the property remains available pending appellate review," but such "[a] stay does not delay the ancillary proceeding or the determination of a third party's rights or interests." Fed.

9

R. Crim. P. 32.2(d).[8]  Similarly, in relevant part, Federal Rule of Criminal Procedure 38 provides that, "[i]f the defendant appeals, the district court, or the court of appeals under Federal Rule of Appellate Procedure 8, may stay—on any terms considered appropriate—any sentence providing for restitution. Fed. R. Crim. P. 38(e)(1). Whether to stay the defendant's forfeiture or restitution obligations pending appeal is committed to the broad discretion of this Court. *See United States v. Silver*, No. 15-CR-93 (VEC), 2018 WL 4440496, at *10 (S.D.N.Y. Sept. 17, 2018).

As to restitution, some courts have evaluated four factors when considering whether to grant a stay, including "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *United States v. Razzouk*, No. 11-CR-430 (ARR), 2018 WL 3574868, at *1 (E.D.N.Y. July 25, 2018). In such cases, those courts have "give[n] the most weight to the first two factors." *Id.* Neither weighs in Tagliaferro's favor. As discussed above, the defendant's arguments regarding reversal are meritless. Moreover, the defendant is not facing an imminent payment of $145,065.33 as he claims. The Court's restitution order, which was filed within ninety days of sentencing, *see* 18 U.S.C. § 3664(d)(5), clearly provides that restitution is payable in monthly installments tied to the defendant's monthly income. (*See* ECF No. 191 at 2.) Under the circumstances of this case, the Government does not intend to seek modification of that

---

[8] Citing a letter filed two years ago in a different case, Tagliaferro misleadingly suggests that the Government routinely agrees to such stays. (Br. 11–12.) It does not. While "as a matter of policy the Government does not *dispose* of forfeited funds until the conclusion of any appeal of the forfeiture, even absent a court-imposed stay," *United States v. Vilar*, 05 Cr. 621 (RJS), Doc. No. 836 (S.D.N.Y. Oct. 22, 2019) (emphasis added), the Government does not routinely agree to delay financial obligations imposed as part of a valid sentence. To the contrary, the Government frequently opposes such requests, because such delays may risk further dissipation of assets.

payment schedule at least during the pendency of the defendant's appeal. As such, the defendant is not required to pay $145,065.33 as a lump sum, and he has identified no immediate and irreparable harm that would be caused by the monthly payments specified in the Court's order.

With respect to forfeiture, "District [C]ourts in this Circuit typically consider four factors when considering a motion to stay a forfeiture order: 1) the likelihood of success on appeal; 2) whether the forfeited asset is likely to depreciate over time; 3) the forfeited asset's intrinsic value to defendant (*i.e.*, the availability of substitutes); and 4) the expense of maintaining the forfeited property." *Silver*, 2018 WL 4440496 at *10. These factors, too, weigh against granting the defendant's request. As noted above, the defendant's arguments regarding reversal are meritless. *See id.* (stating that the Court was "swayed most by the lack of merit in [the] appeal" and observing that it "unlikely to prevail, and this outweighs his asserted hardship of having to liquidate assets"). And while Tagliaferro's motion describes at length steps that he *might* take to satisfy his forfeiture obligation, nothing in the Court's order requires the defendant to surrender property, liquidate assets, or make specified payments. The Court's forfeiture order merely imposes on the defendant an obligation to pay a money judgment, and confirms the Government's right to seek forfeiture of that amount or equivalent substitute assets. If the Government seeks such forfeiture, the defendant's concerns about particular property may be addressed at that stage. To date, however, the Government has not done so. Nor has the defendant attempted to discuss with the Government any voluntary forfeiture or payment arrangements to avoid the potential hardships he imagines.

In sum, there is no reason to stay the financial obligations that were imposed as part of Tagliaferro's sentence.

**IV.   The Court Should Not Stay the Defendant's Surrender Date**

Although not meaningfully addressed in his submission, the final sentence of Tagliaferro's motion further asks that, "[i]n the event this Court denies [his] motion," the Court "continue his

11

bail and stay his surrender date and the payment of the restitution and forfeiture orders until thirty days after the Court of Appeals has denied a motion for bail and/or for a stay," purportedly in order "to afford the Court of Appeals time to evaluate Mr. Tagliafer[r]o's arguments in a non-emergency setting," because "Tagliaferro's surrender date is January 10, 2022, which may or may not be sufficient time to resolve these issues on appeal." (Br. 14 & n.2.)  That request should be denied.

For the reasons explained herein, the defendant's motion fails on the merits.  And any purported "emergency setting" is entirely of the defendant's own making.  The defendant was sentenced on September 8, 2021, and final judgment was entered the very next day.  At sentencing, it was the defendant who proposed a date in January 2022.  (Sent. Tr. at 32.)  He did not request bail pending appeal at that time, but instead waited more than two months before filing this motion.  There is no basis to postpone the defendant's surrender date.

## CONCLUSION

For the foregoing reasons, the defendant's motions should be denied.

Dated:   New York, New York
         December 6, 2021

                                            Respectfully submitted,

                                            DAMIAN WILLIAMS
                                            United States Attorney
                                            Southern District of New York

By:            /s/            

                                            Thomas McKay
                                            Jarrod L. Schaeffer
                                            Assistant United States Attorneys
                                            Tel.: (212) 637-2268 / 2270