UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------X
:
United States of America, :
:
   *-against-* : 19-CR-472 (PAC)
:
Salvatore Tagliaferro, : **OPINION & ORDER**
:
   *Defendant.* :
:
-----------------------------------------------------------X

     After a jury returned a verdict convicting him of three counts[1] in connection with a union bribery scheme, the Court sentenced Defendant Salvatore Tagliaferro to three concurrent imprisonment terms of sixty months followed by two years of supervised release, forfeiture in the amount of $296,400.00, and restitution in the amount of $145,065.33. (*See* Judgment, ECF No. 188; Preliminary Order of Forfeiture, ECF No. 190.) In anticipation of arguing on appeal that his Sixth Amendment right to counsel of his choice was violated, Tagliaferro now moves to continue his bail and stay his forfeiture and restitution penalties pending appeal. (*See* Motions, ECF No. 198.)[2] In the alternative, he requests that the Court continue his bail, stay his surrender date, and stay the payment of the restitution and forfeiture orders until thirty days after the Second Circuit has denied a motion for bail or a stay. (*See id.*)

     For the reasons set forth below, Tagliaferro's motions are **DENIED**.

---

[1] The jury found Tagliaferro guilty of (1) conspiracy to convert labor union property and commit honest services wire fraud, 18 U.S.C. § 371; (2) conversion of union assets, 29 U.S.C. § 501(c) and 18 U.S.C. § 2; and (3) honest services wire fraud, 18 U.S.C. §§ 1343. (*See* Judgment, ECF No. 188.)

[2] Tagliaferro filed his memorandum in support of these motions on November 19, 2021 at ECF No. 199. The Government filed its opposition on December 6, 2021 at ECF No. 200. Tagliaferro filed his reply earlier this week, on December 13, 2021, at ECF No. 201.

1

## BACKGROUND

Familiarity with this matter is presumed, having been set forth, *inter alia*, in this Court's Opinion and Order denying Tagliaferro's motions for relief pursuant to Rules 29 and 33 on substantially similar grounds (the "Post-Trial Order"). (*See* Post-Trial Order, ECF No. 176.)

After initially scheduling trial for May 4, 2020 (*see* Min. Entry dated Nov. 7, 2019), the Court was forced, due to the COVID-19 pandemic, to grant several adjournments throughout 2020 and early 2021. (*See, e.g.*, Memo Endorsement, ECF No. 62.) At long last, the Court managed to secure approval from the District's assignment committee for an April 5, 2021 trial date. (*See* Order, ECF No. 114.) Unfortunately, a week before trial was to begin, Tagliaferro's lead attorney, Richard Rosenberg, suffered a fall, fracturing several bones, including vertebrae in his back, and temporarily losing consciousness. (*See* Mar. 31 Conf. Tr. 2–4.)[3] In the immediate aftermath of Mr. Rosenberg's accident, it was unknown whether or when he would be able to continue his representation in this matter. (*See id.*)

Faced with the prospect of further indefinite delay, set against an ongoing backdrop of administrative uncertainty surrounding jury trials, the Court questioned Tagliaferro's other attorney, Michael Bachrach, regarding his ability to effectively represent Tagliaferro at trial. (*See* Mar. 31 Conf. Tr. 5, 9–11.) Mr. Bachrach replied that he was on the District's CJA panel, had tried a half dozen federal cases, and was familiar with much, but not all, of the Government's case against Tagliaferro. (*Id.* at 5.)

Armed with this information, the Court consulted the District's assignment committee, who advised that an April 20, 2021 trial date—a fifteen-day delay—was available and feasible under these exceptional circumstances. (*Id.* at 13.) The Court informed the parties that trial would

---

[3] Portions of this transcript have been sealed and are unavailable on the public docket.

2

proceed on April 20, 2021. (*Id.*) It explained that this delay would both (1) allow for the possibility that Mr. Rosenberg could recover in time to try the case should his diagnosis prove better than feared, and (2) permit Mr. Bachrach to fully prepare himself for trial should Mr. Rosenberg's unavailability persist. (*Id.* at 13.) Neither Mr. Bachrach nor Tagliaferro objected. Mr. Bachrach stated, "Thank you, [Y]our Honor. I appreciate the latitude, I truly do. And I hope that Mr. Rosenberg will be well enough by that point." (*Id.* at 14.)

When it became clear that Mr. Rosenberg would be unable to try the case, Tagliaferro requested that the Court appoint another member of the CJA panel, Susan Kellman, in his place. (*See* Tagliaferro *Ex Parte* Ltr. dated April 6, 2021.) "With Ms. Kellman's assistance," Mr. Bachrach wrote on his client's behalf, "together we can be prepared to proceed to trial on April 20, 2021." (*Id.*) Mr. Rosenberg also wrote the Court to support Ms. Kellman's appointment. (*See* Rosenberg *Ex Parte* Ltr. dated April 6, 2021.) The Court granted the request and appointed Ms. Kellman to represent Tagliaferro at trial. (*See* Notice of Attorney Appearance, EDF No. 141.)

Trial went forward as scheduled on April 20, with Mr. Bachrach and Ms. Kellman appearing on behalf of Tagliaferro. (*See* Min. Entry dated April 20, 2021.)

## DISCUSSION

### I. Motion to Continue Bail

#### a. Legal Standard

Because "a guilty verdict greatly reduces a defendant's expectation in continued liberty," the relevant statutory guidance "establishes a presumption in favor of detention." *United States v. Abuhamra*, 389 F.3d 309, 319 (2d Cir. 2004); *see United States v. Randell*, 761 F.2d 122, 124 (2d Cir. 1985) ("Congress intended section 3143 to reverse the then prevailing presumption in favor of post-conviction bail."). Under the Bail Reform Act of 1984, a district court "shall order that a

3

person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal . . . be detained, unless" it finds "by clear and convincing evidence" that the person is unlikely to flee or pose a danger to the community, *and* "that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in" reversal, an order for a new trial, a sentence without imprisonment, or a sentence expected to last less than the time already served plus the duration of the appeal process. 18 U.S.C. § 3143(b).

The Second Circuit has inferred from this statutory guidance several requirements that must each be satisfied, including, as relevant here, "that the appeal raises a substantial question of law or fact."[4] *Randell*, 761 F.2d at 125. A "substantial" question is "one which is either novel, which has not been decided by controlling precedent, or which is fairly doubtful"—in other words, it is a "close" question "that very well could be decided the other way." *Id.* The defendant bears the burden to demonstrate that this requirement is met. *Id.*

### b. Analysis

Tagliaferro does not raise a substantial question of law or fact on appeal. The sole issue he raises is that the Court deprived him of his Sixth Amendment right to counsel of his choice when it declined to adjourn trial indefinitely to accommodate Mr. Rosenberg's uncertain recovery timetable. Tagliaferro raised this same issue in his post-trial motions for relief under Rules 29 and 33. Since the Court already issued a detailed ruling on this precise issue, it need not restate its rationales in full. (*See* Post-Trial Order 8–11.) It thus includes here only the portion of its analysis relevant to whether this issue constitutes a substantial question.

---

[4] Because the Court finds that this appeal does not raise a substantial question of law or fact, it need not address the other three requirements: that the defendant is not likely to flee or pose a danger to the community, that the appeal is not for purpose of delay, and that the defendant's success on appeal would likely result in reversal or an order for a new trial on all counts for which imprisonment has been imposed. *See Randell*, 761 F.2d at 125.

4

The Court's Post-Trial Order was guided by binding precedent concerning the limits of the Sixth Amendment right to choose counsel. The Supreme Court has "recognized a trial court's wide latitude in balancing the right to counsel of choice against the needs of fairness, and against the demands of its calendar." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 152 (2006) (internal citations omitted). A district court is thus afforded "a great deal of latitude in scheduling trials." *Morris v. Slappy*, 461 U.S. 1, 11–12 (1983). Although it "may not compel a defendant to proceed with incompetent counsel, it may . . . require a defendant to proceed to trial with counsel not of defendant's choosing." *United States v. Griffiths*, 750 F.3d 237, 241 (2d Cir. 2014) (cleaned up). Relevant considerations include, among others, the "problem[] of assembling the witnesses, lawyers, and jurors at the same place at the same time," a burden that "counsels against continuances except for compelling reasons." *Morris*, 461 U.S. at 11. Ultimately, "only an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay violates the right to the assistance of counsel." *Id.* at 11–12.

The Court's decision in this matter comfortably meets this standard. It concluded, under exceptional circumstances, that it could not justify conditioning trial on the uncertain timing of Mr. Rosenberg's recovery. As it explained in detail in the Post-Trial Order, the Court's rationales included: the constraints imposed by the pandemic, and the assignment committee, who had final say over the scheduling of all jury trials; relatedly, the burdens—financial and otherwise—already imposed upon Tagliaferro throughout the previous year's adjournments; the fact that Tagliaferro did not object to the Court's decision but rather requested, through Mr. Bachrach, only a "couple-week delay" (which the Court accommodated) to learn more about Mr. Rosenberg's diagnosis (*see* Mar. 31 Conf. Tr. 6.) The Court was also aware that trial in this matter would be extensive, involving dozens of witnesses who had already been forced to rearrange their schedules to

5

accommodate the original trial date. Finally, the Court was swayed by Mr. Bachrach's assurances that he could capably represent Tagliaferro at trial if given extra time to prepare; and, with Mr. Rosenberg's blessing,[5] the Court appointed Ms. Kellman, who had worked on over 100 federal felony matters across 40 years, to serve alongside Mr. Bachrach. In light of all this, the Court concluded that the balance of interests in favor of proceeding with the April 20 trial date substantially outweighed Tagliaferro's interest in awaiting Mr. Rosenberg's uncertain return to fitness.

Although he did not object at the time, Tagliaferro now disagrees.[6] He relies on a single case from the Western District of New York in support of the proposition that courts in this Circuit are "split" as to whether this Court was required to adjourn trial indefinitely. (*See* Def.'s Mem. 6–10, ECF No. 199.) But that case, *United States v. Parlato*, in fact stands squarely for the proposition that courts have "broad discretion" over such questions. 2021 WL 1884106, at *1 (W.D.N.Y. May 11, 2021). The *Parlato* court echoed that "[t]here should be no doubt that unavailability of a defendant's counsel of choice does not dictate a federal court's criminal trial schedule." *Id.* at *2. After "balancing defendant Parlato's Sixth Amendment right to his choice of secondary counsel against the urgent need for a trial and the demands on the Court's docket,"

---

[5] Alternatively, Mr. Rosenberg recommended an adjournment until June 2021 in the hope of recovering from his injuries by then and representing Tagliaferro at trial, stating his belief that it would be difficult for Mr. Bachrach and Ms. Kellman to replicate his expertise in this case in time for an April 20 trial. (*See* Rosenberg *Ex Parte* Ltr. dated April 6, 2021.) Mr. Rosenberg also acknowledged, however, that he had "no definitive medical prognosis to offer the Court unfortunately" regarding any firm date at which he would be fit to try the case. (*Id.*)

[6] Tagliaferro initially expressed on March 31, 2021 that he would prefer to further delay trial and wait for Mr. Rosenberg's return rather than proceed with the *pre*-adjournment April 5 trial date. (*See* Mar. 31 Conf. Tr. 10.) This view was directly informed by Mr. Bachrach's insistence that he could not adequately prepare in time for an April 5 trial date. (*See id.*) However, after the Court obliged their request for a two-week delay, Tagliaferro did not object, and Mr. Bachrach thanked the Court for its "latitude." (*Id.* at 14.)

6

the *Parlato* court exercised its discretion to adjourn the anticipated eight-week trial until after one of the defendant's attorneys had concluded his work in a finite, conflicting trial. *Id.* at *5.

This Court exercised this same discretion under different circumstances and reached a different result. Surely, the "broad discretion" afforded district courts must allow for such variety in outcomes, depending on the individual concerns facing each individual court at any given time. *See Parlato*, 2021 WL 1884106, at *1 (quoting *Morris*, 461 U.S. at 11). The Court thus concludes that Tagliaferro's grounds for appeal are neither "novel," nor uninformed by "controlling precedent," nor "fairly doubtful," and therefore cannot justify a continuation of bail. *See Randell*, 761 F.2d at 125.

## II.     Motion to Stay Financial Penalties

Tagliaferro's motion for a stay of his financial obligations fails for similar reasons. Both a stay of restitution and a stay of forfeiture depend in large part on a defendant's likelihood of success upon appeal which, as discussed *supra* pp. 4–6, Tagliaferro has failed to demonstrate.

"To determine whether to grant a [restitution] stay, courts have analyzed four factors: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *United States v. Razzouk*, No. 11-CR-430 (ARR), 2018 WL 3574868, at *1 (E.D.N.Y. July 25, 2018) (citing Fed. R. Crim. P. 38(e)(1)) (internal quotations omitted). "Courts give the most weight to the first two factors." *Id.*

Factors (1) and (2) weigh strongly against a stay of restitution. Tagliaferro has not only failed to show a likelihood of success on appeal, but he also fails to demonstrate that he will be irreparably injured absent a stay: the Court's restitution order provides for payment in monthly

7

installments based on a percentage of his monthly income.[7] (*See* Order of Restitution, ECF No. 191.) The Court therefore finds that a stay of restitution is not warranted.

As to forfeiture, "[d]istrict courts in this Circuit typically consider four factors . . . : 1) the likelihood of success on appeal; 2) whether the forfeited asset is likely to depreciate over time; 3) the forfeited asset's intrinsic value to defendant (i.e., the availability of substitutes); and 4) the expense of maintaining the forfeited property." *United States v. Silver*, No. 15-CR-93 (VEC), 2018 WL 4440496, at *10 (S.D.N.Y. Sept. 17, 2018)) (citing Fed. R. Crim. P. 32.2(d)).

These factors likewise counsel against a stay. While the Court is "not unsympathetic to [the defendant's] position," it is "swayed most by the lack of merit in [his] appeal" and finds that "this outweighs his asserted hardship of having to liquidate assets," should that indeed be necessary, and should the Government choose to seek such forfeiture. *See Silver*, 2018 WL 4440496, at *10 (denying a requested stay of fine and forfeiture). It thus finds that a stay of forfeiture is not warranted at this time.

### III. <u>Alternative Request</u>

The Court also denies Tagliaferro's request, in the alternative, for the Court to continue his bail, and to stay his surrender date and financial penalties, until thirty days after the Second Circuit has had an opportunity to grant or deny preliminary relief. Tagliaferro cites no authority for this request, and the Court finds that it is unjustified. Tagliaferro is at liberty to seek emergency relief from the Second Circuit prior to his January 10, 2022 surrender date—over three months after his

---

[7] Neither factor (3) nor factor (4) weigh strongly in either party's favor. *See Razzouk*, 2018 WL 3574868, at *1.

sentencing hearing,[8] and over three weeks from the date of this Order—if he deems such a course appropriate.

## CONCLUSION

For the foregoing reasons, Tagliaferro's motions are **DENIED**. The Clerk of Court is respectfully directed to terminate the motions at ECF No. 198.

Dated: New York, New York  
December 16, 2021

SO ORDERED

_____  
HONORABLE PAUL A. CROTTY  
United States District Judge

---

[8] The Court accommodated Tagliaferro's request to defer his surrender date until January so that he could spend the holidays with his family. (*See* Sept. 9, 2021 Tr. 32.)