```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
UNITED STATES OF AMERICA,           :
                                    :     19-CR-472 (LAP)
       -v.-                         :
                                    :     MEMORANDUM
                                    :     & ORDER
SALVATORE TAGLIAFERRO,              :
                                    :
              Defendant.            :
------------------------------------x
```

LORETTA A. PRESKA, Senior United States District Judge:

Before the Court is Defendant Salvatore Tagliaferro's motion for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), (dkt. no. 237 ("Def. Mot.")), the Government's opposition, (dkt. no. 238 ("Gov't Opp.")), and Defendant's reply, (dkt. no. 241 ("Def. Reply")).  For the reasons set out below, the motion is granted.

### I. Background

#### A. Defendant's Offense Conduct

Since in or about 2011, Defendant was the President of the Local 926 chapter ("the Local 926") of the United Brotherhood of Carpenters and Joiners of America (the "Union").  (See dkt. no. 182 ("PSR") ¶ 14.)  In this capacity, Defendant had a duty to provide honest services to the Union and his local chapter.  (PSR ¶ 17.)

At a Christmas party in late 2017, Defendant and his co-defendant, John DeFalco, an officer of another local chapter,

1

devised a scheme to solicit and accept cash bribes from prospective Union members in exchange for the Defendant's use of his authority to admit the bribe payors into the Union. (See Trial Transcript ("Trial Tr.") at 263-65.) Specifically, DeFalco would recruit prospective members, collect cash bribes from those prospective members, and then meet with Defendant and divide the money evenly between them. (See id. at 261, 275-76.) Defendant would then use his exclusive control over admission into the Local 926 to ensure that the bribe payors were admitted. (See id. at 227-28, 274-75, 291, 294, 305, 341.)

This scheme continued until the spring of 2019. During that period, membership in the Local 926 substantially increased. The majority of new members, however, did not obtain Union jobs in subsequent years. (See PSR ¶ 23; Gov't Trial Ex. 601; Gov't Trial Ex. 602.) Approximately 494 prospective Union members paid Defendant and DeFalco bribes, totaling more than $296,400. (See dkt. no. 195 ("Sent. Tr.") at 30.)

### B. Defendant's Criminal History

Defendant has zero criminal history points and is therefore in Criminal History Category I. (PSR ¶ 56.) Though too old to merit consideration under the Guidelines, Defendant has three prior convictions, which are as follows: Attempted Burglary in the Second Degree in 1982, Assault in the Third Degree in 1988, and Conspiracy to Transport Stolen Goods in 1997. (PSR ¶¶ 53-55.)

With respect to the conviction for conspiracy to transport stolen goods, Defendant and his coconspirators stole several tractor trailers full of retail goods worth hundreds of thousands of dollars. (PSR ¶ 55.)  Defendant was convicted in federal court in Brooklyn and sentenced to 18 months incarceration and three years of supervised release. (PSR ¶ 55.)  These convictions provide relevant context for the Court to consider when analyzing the factors under 18 U.S.C. § 3553(a).

### C. Procedural History

Defendant was initially charged in a five-count indictment. Count One charged Defendant with conspiracy to commit embezzlement of Union assets and honest services wire fraud, in violation of 18 U.S.C. § 371.  Count Two charged Defendant with conversion of Union assets, in violation of 29 U.S.C. § 501(c) and 18 U.S.C. § 2. Count Three charged Defendant with honest services wire fraud, in violation of 18 U.S.C. § 1343, 1346, and 2.  Count Four charged Defendant with witness tampering, in violation of 18 U.S.C. § 1512(b)(1) and 2.  Count Five charged Defendant with obstruction of justice, in violation of 18 U.S.C. § 1512(b)(2)(A) and 2.

#### i.   Trial and Sentencing

Defendant proceeded to trial, and on April 28, 2021, after less than two days of deliberations, the jury returned guilty verdicts on Counts One through Three, as described above.  (See Trial Tr. at 697, 709.)  On September 9, 2021, the Court sentenced

3

Defendant to a below Guidelines sentence of 60 months imprisonment. (See Sent. Tr. at 30.) In imposing this sentence, the Court emphasized the seriousness of the offense, including that Defendant "was a substantial leader in this scheme" and that the scheme "took advantage of people who were desperate for jobs." (Id. at 29.) The Court further explained that "part of the strength of a good union is having a reputation for honesty and integrity, which was put at risk by the conduct which is charged here." (Id.)

Following the imposition of the judgment, Defendant appealed his conviction. The Court of Appeals affirmed the conviction on June 2, 2023. See United States v. Tagliaferro, No. 21-2223, 2023 WL 3772334, at *5 (2d Cir. June 2, 2023) (summary order).

### ii. Current Custody Status

As of this Order, Defendant has served approximately 34 months, or over 50% of his 60-month sentence. Assuming maximum good-time credit, his expected release date is June 5, 2025. (See Gov't Opp. at 2.) Defendant is currently housed at Fort Dix FIC. (See id.)

As of January 30, 2024, there are only two active cases of COVID-19 among Fort Dix FIC's 3,781 inmates, and the COVID-19 vaccines have been widely administered to the inmate and staff populations. See Federal Bureau of Prisons ("BOP"), BOP COVID-19 Statistics,

4

https://www3.fed.bop.gov/coronavirus/covid19_statistics.html (last visited January 30, 2024).

### iii. Defendant's Motion for a Sentence Reduction

On January 4, 2024, Defendant, through counsel, filed a motion seeking a reduction in sentence pursuant to 18 U.S.C. § 3582(c)(1)(A). On January 22, 2024, the motion was docketed. (See Def. Mot.) Defendant argued that extraordinary circumstances exist because he suffers from "multiple serious and potentially fatal health conditions," including "out-of-control hypertension," "a documented history of sleep apnea," and "acid reflux," and because he needs to be released to help care for his "special-needs son who struggles with autism." (Def. Mot. at 1, 7).

On November 6, 2023, Defendant submitted a compassionate release request to the warden of Fort Dix FCI, raising only high blood pressure and "lack of proper mental health psychological care." (Id. Ex. D.) The Warden denied the request on November 29, 2023, although Defendant states that he never received the Warden's denial. (See Gov't Opp. at 3.) Accordingly, Defendant contends that he has satisfied the exhaustion requirement set forth in 18 U.S.C. § 3582(c)(1)(A). (See Def. Mot. at 3.)

## II. Applicable Law

Under 18 U.S.C. § 3582, as amended by the First Step Act, the court "may not modify a term of imprisonment once it has been imposed," except that:

> [T]he court, upon motion of the Director of the Bureau of Prisons [(the "BOP")], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A)(i).

"Originally, § 3582(c)(1)(A) did not permit defendants to initiate compassionate release proceedings; it required the BOP to seek such release on their behalf." United States v. Corbett, No. 10 Cr. 184 (PAE), 2023 WL 8073638, at *3 (S.D.N.Y. Nov. 21, 2023) (citing United States v. Phillibert, 557 F. Supp. 3d 456, 459 (2d Cir. 2020). But in 2018, Congress enacted the First Step Act and "authorized courts to reduce a term of imprisonment upon motion by a defendant." United States v. Amato, 48 F.4th 61, 63 (2d Cir. 2022) (per curiam).

The Sentencing Commission is responsible for "describ[ing] what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). Accordingly, even before the First Step Act was enacted, the Sentencing

6

Commission promulgated a policy statement—Section 1B1.13 of the Guidelines—concerning sentence reductions under Section 3582, which explained, among other things, what constitutes an extraordinary and compelling reason for a sentence reduction.

In September 2020, the Court of Appeals held that this policy statement "applied only to a 'motion of the Director of the Bureau of Prisons,' see U.S.S.G. § 1B1.13 (historical note), and not 'to compassionate release motions brought by defendants[.]'" Corbett, 2023 WL 8073638, at *3 (quoting United States v. Brooker, 976 F.3d 228, 236 (2d Cir. 2020)). As a result, the Court of Appeals explained that the policy statement did not "constrain district courts' discretion to consider whether any reasons are extraordinary and compelling." Brooker, 976 F.3d at 236. Even though Section 1B1.13 did not govern compassionate release motions filed by a defendant, district courts were nevertheless able to "look[] to § 1B1.13 for guidance in the exercise of [their] discretion" when considering such a motion. United States v. Rodriguez, No. 16 Cr. 07 (AJN), 2020 WL 7640539, at *3 (S.D.N.Y. Dec. 23, 2020).

However, "[e]ffective November 1, 2023, . . . the Sentencing Commission amended the Guidelines to also cover defendant-initiated petitions." Corbett, 2023 WL 8073638, at *3 (citing U.S. Sent'g Commission, Amendments to the Sentencing Guidelines, 88 Fed. Reg. 28,254 (effective Nov. 1, 2023)). "The amended

7

guidance from the Commission as to what constitutes extraordinary and compelling reasons now controls the analysis of a compassionate release petition, however initiated." Id. Section 1B1.13 of the Guidelines, as amended, explains what circumstances, "singly or in combination," constitute extraordinary and compelling reasons for release. Id. These include, at a high level, certain medical circumstances of the defendant, the age of the defendant, certain family circumstances, whether the defendant was the victim of abuse while in custody, other circumstances of similar gravity, and changes in law that make the defendant's sentence unusually long. See U.S.S.G. § 1B1.13(b).

In short, when a court considers a motion for compassionate release filed by a defendant, the court may only grant that motion where the defendant has demonstrated that (i) he has exhausted his administrative remedies, (ii) there are extraordinary and compelling reasons for a reduction of the sentence, (iii) the Section 3553(a) factors favor such a reduction, and (iv) such a reduction is consistent with the Sentencing Commission's policy statements. See 18 U.S.C. § 3582(c)(1)(A)(i). The defendant, as the proponent of the motion, bears the burden of proving that he is entitled to the requested relief under § 3582. See United States v. Butler, 970 F.2d 1017, 1026 (2d Cir. 1992) ("A party with an affirmative goal and presumptive access to proof on a given issue normally has the burden of proof as to that issue."); United

8

States v. Ebbers, 432 F. Supp. 3d 421, 426 (S.D.N.Y. 2020) ("The defendant has the burden to show he is entitled to a sentence reduction.") (citing Butler); United States v. Givens, No. 14 Cr. 546-09 (CM), 2020 WL 4699042, at *2 (S.D.N.Y. Aug. 13, 2020) (similar).

### III. Discussion

The Government contends that Defendant has not exhausted his administrative remedies because in his letter to the Warden he relied on his high blood pressure and lack of mental health treatment, while in Def. Mot. he adds untreated sleep apnea, acid reflux, and his son's autism. (Gov't Opp. at 5.)  While courts in this district have not been of one mind as to whether Section 3582(c)(1)(A) requires a defendant to exhaust administrative remedies with respect to each issue raised in a motion for compassionate release, e.g., United States v. Gunn, No. 06 Cr. 911, 2022 WL 2077971, at *3 (S.D.N.Y. June 9, 2022), the Court adopts Judge Sidney H. Stein's well-reasoned analysis in United States v. Torres, 464 F. Supp. 3d 651, 655-56 (S.D.N.Y. 2020) holding the contrary – that issue exhaustion is not required. Accordingly, the Court finds that Defendant has exhausted his administrative remedies.

The Government argues that judges in this District have found that routine medical conditions like those of which the Defendant complains fall short of extraordinary or compelling reasons

warranting early release when being treated by the BOP. (Gov't Opp. at 6) (collecting cases). Here, however, the Defendant's condition of high blood pressure is not routine. Defendant has early onset cardiovascular disease. (See Def. Mot. at 5.) At age forty-three, in 2007, Defendant had heart surgery in which a stent was placed in his artery. (See PSR ¶ 77.) His heart disease is in line with many members of his family who have similarly suffered and passed away at early ages: his father passed away from heart disease at 62; his mother passed away from heart disease at 52; and his brother passed away from heart disease at 43. (See dkt. no. 184 (Defendant's Sentencing Submission) at 14; Def. Mot. at 5.)

Upon reporting to the BOP, Defendant brought his CPAP machines, but he was not allowed to bring it in. (Def. Mot. at 4.) Although he immediately began the process to obtain a CPAP machines, (id.), he did not receive one until October of 2023 – more than a year later. (Def. Reply at 2.) As Defendant's counsel states:

> Around the time of his arrival at the facility, on or around February 22, 2022, Mr. Tagliaferro's blood pressure was a staggering 187-108. On March 4, 2022, Mr. Tagliaferro's blood pressure was still elevated at 178/91. By June of 2022, Mr. Tagliaferro's blood pressure lowered to 159/80, which is still high, especially in light of the fact that he was taking blood-pressure medication at this point. By August of 2022 Mr. Tagliaferro's blood pressure was back up to 178/91. As recently as August of 2023, Mr. Tagliaferro's blood pressure was 172/90. See copies of Mr. Tagliaferro's

>Clinical Encounters. High Blood-pressure remains an ongoing problem for Mr. Tagliaferro, even with the intervention of blood pressure medication.

(Def. Mot. at 4-5.)

Although the Court is not a doctor, the persistence of Defendant's admittedly astronomical blood pressure demonstrates that the BOP is not adequately treating Defendant's condition. See United States v. Brady, 18 Cr. 316 (PAC), 2021 WL 200512, at *1-2 (S.D.N.Y. Jan. 20, 2021); Miner v. United States, 16 Cr. 23 (PAC), 2023 WL 3222394, at *4 (S.D.N.Y. May 2, 2023) (quoting United States v. Tirado, No. 15 CRM. 487-5 (GBD), 2021 WL 392029, at *1 (S.D.N.Y. Feb. 4, 2021)) (noting that a motion to reduce sentence for a medical condition will be granted where a defendant's physical condition "can[not] be treated within the context of a correctional facility"). In the Court's view, the risk of Defendant's untreated high blood pressure is exacerbated by his family history, as noted above. Accordingly, the Court finds that Defendant has established extraordinary and compelling reasons for release.

With respect to the Section 3553(a) factors, while Defendant's crime is admittedly serious, it was a monetary crime where no one suffered physical injury. While Defendant was given a below Guidelines sentence, he has served over half that sentence and, indeed, is scheduled for release in approximately six months. Thus, he has by and large served his punishment.

11

While the Court is persuaded that this period of imprisonment will deter this Defendant from committing further crimes, general deterrence always remains a factor.  Here, the Defendant's serving multiple years in prison is, in the Court's view, sufficient to deter others who might be tempted to engage in similar activity.

Finally, to the extent that there is any perceived unwarranted disparity in releasing this Defendant some six months early, that disparity is warranted, in the Court's view, by the danger posed to him by the BOP's apparent inability to control his admittedly astronomical blood pressure.  Accordingly, the Section 3553(a) factors counsel release.

## IV.  Conclusion

For the reasons set forth above, Defendant's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), (dkt. no. 237), is GRANTED, and his sentence is reduced to time served.  As the motion makes no substantial showing of a denial of a constitutional right, a certificate of appealability will not issue.  See 28 U.S.C. § 2253.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal.  Cf. Coppedge v. United States, 369 U.S. 438, 444-45 (1962) (holding that an appellant demonstrates good faith when he seeks review of a nonfrivolous issue).

The Clerk of the Court is directed to close dkt. no. 237.

**SO ORDERED.**

Dated:   New York, New York
         December 11, 2024

_____
LORETTA A. PRESKA
Senior United States District Judge